**Morton EISEN, on Behalf of himself and all other purchasers and sellers of "odd-lots" on the New York Stock Exchange similarly situated, Plaintiff,**

v.

**CARLISLE & JACQUELIN and DeCoppet & Doremus, each limited partnerships under New York Partnership Law, Article 8 and New York Stock Exchange, an unincorporated association, Defendants.**

66 Civ. 1265.

United States District Court
S. D. New York.

Sept. 27, 1966.

Laventhall & Zicklin, New York City, for plaintiff.

Carter, Ledyard & Milburn, New York City, for defendant Carlisle & Jacquelin.

Kelley, Drye, Newhall, Maginnes & Warren, New York City, for defendant DeCoppet & Doremus.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant New York Stock Exchange.

## OPINION

TYLER, District Judge.

This is an action brought by a New York resident, Morton Eisen, charging the two major "odd-lot" dealers on the New York Stock Exchange—defendants Carlisle & Jacquelin and DeCoppet & Doremus—with conspiring and combining to monopolize odd-lot trading and with charging excessive fees in violation of the Sherman Act. 15 U.S.C. 1 and 2. The complaint also pleads a third claim or cause of action against the New York Stock Exchange ("Exchange") upon the theory that the Exchange breached its duties prescribed by the Securities Exchange Act of 1934 for suspension of odd-lot trading. 15 U.S.C. 78f(b), 78f (d) and 78s(a). Eisen, who describes himself as an investor, asserts that he sues for himself and on behalf of all odd-lot purchasers and sellers on the Exchange.

The taproot of Eisen's three claims is the so called "odd-lot differential" charged by the broker defendants and other odd-lot dealers for transactions in other than 100 share lots of securities. As is well known, the normal trading units on the stock exchanges are in multiples of 100 shares, sometimes called "round-lots". Odd-lots, thus, are units of stock less than 100, the established unit of trading. For odd-lot transactions, in addition to the normal brokerage commission, an additional fee known as the "odd-lot differential" is charged. At the time this suit was commenced, the differential was ⅛ point (12½ cents) per share when the price per share was 39⅞ or below and ¼ point (25 cents) when the price was 40 or above. Effective July 1, 1966, however, this "break point" of $40 was increased to $55 under specific approval of the Securities and Exchange Commission. The execution price of an odd-lot includes the differ-

ential. On a customer's order to buy an odd-lot, the differential is added to the price of the effective offer or sale; on a customer's order to sell, the differential is subtracted from the price of the effective sale or bid. It is Eisen's theory in this case that the two broker-dealer defendants, with the benign indulgence of the Exchange, have "established, increased and maintained" the differential.

The defendants have moved pursuant to amended Rule 23(c) (1), F.R.Civ.P., effective July 1, 1966, seeking to obtain an adjudication that the present action is not maintainable as a class action. Plaintiff, of course, relies on new Rule 23 to support his suit as a class action.

Amended Rule 23(a) sets forth four specific prerequisites to a class action:

(1) The class "is so numerous that joinder of all members would be impracticable";

(2) questions of law or fact common to the class exist;

(3) claims or defenses of the representative parties are typical of those of the class; and

(4) the representative parties will adequately protect the interests of the class.

Amended Rule 23(b) specifically states that for a suit to be maintained as a class action, the specific prerequisites just listed must be satisfied and, in addition, at least one of three following requirements or conditions must be shown:

1. Prosecution of separate actions by or against separate members of the class would create a risk of inconsistent or varying adjudications, or adjudications which would practically dispose of or impair the interests of class members not parties thereto;

2. the party opposing the class has acted or failed to act, thereby rendering appropriate injunctive or declaratory relief respecting the entire class; or

3. the court finds that questions of law or fact common to the class pre-

dominate over such questions affecting only individual members and, in addition, that the class action is superior to other available methods or procedures for fair and efficient adjudication of the controversy. See Note of Advisory Committee on Amendments to Rules of Civil Procedure (hereinafter Advisory Com. Note), 39 F.R.D. 98–100.

As will be suggested by the discussion hereinafter, plaintiff's suit could only fit in theory the last-mentioned category or requirement set forth in amended Rule 23(b)—i. e. that plaintiff's suit, if to be maintained as a class action, must be shown to present questions of fact or law common to the class which predominate over such questions effecting only individual members. Suffice it to say here that, despite belated unconvincing suggestions to the contrary in their reply brief, plaintiff's counsel originally intended and argued that their client's suit meets this requirement. Thus, plaintiff in effect attempts to show that his action is what was characterized under former Rule 23 as a spurious class action, and it may be at least generally helpful to consider some of the judge-made requirements and prerequisites for maintaining a spurious class action under the old Rule in order to determine if Eisen has successfully met those specifically set forth in subparagraphs (a) and (b) (3) of the amended Rule. See discussion at 39 F.R.D. 98–103.

The spurious class action under the former Rule was considered merely a permissive joinder device, and prior to the July 1, 1966 amendment, the judgment in such cases bound only the original parties of record and those who intervened and became parties to the action. See Lipsett v. United States, 359 F.2d 956, 959 (2d Cir. 1966); All American Airways, Inc. v. Elderd, 209 F.2d 247 (2d Cir. 1954); Kainz v. Anheuser-Busch, Inc., 194 F.2d 737 (7th Cir. 1952); Schatte v. International Alliance of Theatrical Stage Employees, etc., 183 F.2d 685 (9th Cir. 1950); California Apparel Creators v. Wieder of California, 162 F.2d 893, 174 A.L.R. 481 (2d Cir. 1947); Cutler v. American Federation of Musicians, etc., 211 F.Supp. 433 (S.D.N.Y.1962). The principal requirements for its use were that the character of the right sought to be enforced for or against the class be several, that there be a common question of law or fact affecting the several rights and that common relief be prayed for. Nevertheless, as I read the above cited pre-July 1, 1966, cases and others similar to them, substantially all of the specifically stated prerequisites and requirements now found in amended Rule 23(a) and (b) were deemed essential for maintaining a spurious class action under old Rule 23, even though they were not all spelled out therein. The prerequisite, for example, that the plaintiff bringing the action must be one who will fairly protect the interests of the class was one which, though recognized, did not always cause the courts undue concern, largely because only the original plaintiff and intervenors were bound by the judgment. The Court of Appeals for this Circuit, having long recognized that a spurious class suit under former Rule 23 in reality was no more than a permissive joinder device, stated years ago that, in such suits, "there is no [need] for a searching inquiry concerning the adequacy of [plaintiff's] representation of others in the class." York v. Guaranty Trust Co. of New York, 143 F.2d 503 (2d Cir. 1944), reversed on other grounds, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Notwithstanding that comparatively extreme statement, the courts in this circuit, as in others, did not permit use of the class action device under former Rule 23 where it appeared plainly that plaintiff could not properly protect the interests of the class. See Austin Theatre Inc. v. Warner Bros. Pictures, 19 F.R.D. 93 (S.D. N.Y.1953).

Now that amended Rule 23 purports to obliterate the old distinctions between

**150**

"true", "hybrid" and "spurious" class actions, however, the requirement that plaintiff be able to fairly insure the adequate representation of all becomes considerably more significant since all members of the class are bound by the judgment unless they expressly ask to be excluded from the class. See amended Rule 23(c) (3), F.R.Civ.P.; Lipsett v. United States, supra.

Assuming *arguendo* that plaintiff has adequately set forth and shown compliance with other prerequisites of paragraph (a) of the new rule, he has not . established that he " * * * will fairly and adequately protect the interests of the class". This alone is enough for this court to make a determination that this action cannot be maintained as a class action. See Advisory Com. Note, 39 F.R.D. 100 (1966).

Plaintiff in his papers gives no compelling reasons and alleges no facts to support the proposition that he can adequately protect the interests of possibly hundreds of thousands of members of the alleged class except to assert that both of his lawyers are well-qualified antitrust specialists. In disposing of a similar contention made in Austin Theatre v. Warner Bros. Pictures, supra, 19 F.R.D. at 96, Judge McGohey of this court said, "However, here there is required no more than a superficial inquiry to determine that the plaintiff has failed to allege any facts to show that it will, as claimed, adequately represent the class." Such reasoning applies *a fortiori* under the new concept that all members of a class are bound by any judgment to be entered.

Eisen does not even attempt to estimate the extent of damages which he allegedly suffered as a result of the odd-lot differential, nor does he specify the nature or number of the transactions in which he engaged and wherein he was charged a "differential". A class action is premised in part upon the theory that members of the class who are not before the court can justly be bound because the self-interest of their representatives will assure adequate litigation of the common issues. See Aalco Laundry & Cleaning Co. v. Laundry Linen & Towel Chauffeurs & Helpers Union, 115 S.W. 2d 89 (Mo.App.1938). From the facts as presented, it is impossible to determine and rule that Eisen can adequately protect the interests of the absent members of his asserted class. Concededly, he alleges that he has been an active investor in securities since 1960. We are not told, however, in what he invested. Even assuming, as Eisen would have us do, that he bought and sold securities in odd-lots—i. e. in less than 100 share blocks, we do not know which of the more than 1,600 available listed stocks he purchased or sold, the price ranges of the stocks or the considerations that motivated his transactions. That these are relevant facts is beyond serious question. In the six years during which Eisen claims to have been an investor, over 1,147,000,000 shares of stock were traded in odd-lot transactions. Some of the participants in these dealings were investors like Eisen, but just as certainly others were dealers, traders, arbitrageurs and speculators. The prices of the shares involved ranged from several dollars to several hundred dollars. The nature of the myriad odd-lot transactions was certainly varied; orders were limited or contingent, on margin or for cash, long or short, and for a fixed amount or on a long term investment plan.[1] In short, even if Eisen were given leave to serve an amended pleading setting forth with particularity the nature and amount of his own investment transactions, the diverse rights and interests of other members of the claimed class plainly could not be reasonably protected by plaintiff in this litigation.

■ Eisen's inadequacy as a representative of the asserted class is further

---

1. See Rule 124 of the New York Stock Exchange.

underscored by the obvious fact that his interest, as sole plaintiff, is miniscule compared to the interests of the class as a whole. The number of plaintiffs bringing a class action in relation to the numerical size of the class, of course, should not be the sole basis for determining the existence or non-existence of a class action; however, it can be a valid and important factor in assessing plaintiff's ability to adequately represent the class. Weeks v. Bareco Oil Co., 125 F.2d 84 (7th Cir. 1941); Pelelas v. Caterpillar Tractor Co., 113 F.2d 629 (7th Cir. 1940); McArthur v. Scott, 113 U.S. 340, 5 S.Ct. 652, 28 L.Ed. 1015 (1884). In Pelelas, supra, 113 F.2d at 632, the court held, " * * * under it [Rule 23] the court is at liberty to consider the number appearing on record as contrasted with the number in the class * * *. There must be a sufficient number of persons to insure a fair representation of the class." Eisen himself estimates—perhaps too conservatively—that the class numbers in the hundreds of thousands.[2] Thus, it is impossible to assume that he alone with a comparatively miniscule and limited interest in odd-lot transactions can represent that large a class, many of whose members necessarily have larger and different interests.

By far the most serious difficulty with plaintiff's claim to be able to properly protect the interests of the class, in my judgment, is that stemming from subparagraphs (2) and (3) of amended Rule 23(c). In substance, these provide, *inter alia*, that in a class action the best notice practicable must be furnished to the class members and that the notice must specifically warn such persons that they will be bound by any judgment in the action unless they appear and request exclusion therefrom. Further, of course, it is provided in subparagraph (c) (3) that the judgment, whether favorable or unfavorable to the class, shall include all members of the class as found by the court and who do not appear and obtain specific exclusion.

As already suggested, this provision represents a most important substantive change from Rule 23 as it read prior to July 1, 1966. Lipsett v. United States, supra. Presumably aware of this change, Eisen claims to be the sole representative of hundreds of thousands of other persons who paid the odd-lot differential and who necessarily will be bound under Rule 23(c) (3) by any judgment in this action unless they specifically ask to be excluded after receiving appropriate notice. Yet he does not claim that one other person or entity has expressed the slightest interest in the prosecution of this action. See Weeks v. Bareco Oil Co., supra, 125 F.2d at 94. More important, Eisen and his counsel have taken the curious position in their papers and upon oral argument that press advertisements plus notices to stock exchange firms will constitute all the notice necessary in this case. To this, I am constrained to make two observations. First, in the light of the new concept under the amended Rule that members of a class are specifically bound by any judgment, favorable or unfavorable, unless they affirmatively "opt out", it is virtually certain that far better notice than plaintiff apparently contemplates would be necessary here to comply with amended Rule 23(c) (2) and, even more importantly, with due process standards. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315–320, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In other words, as defense counsel have incisively argued, both the Rule and concepts of due process require individual notice for the class members who can be identified and notice amounting to more than a "mere gesture" for those who cannot be identified. Because of obvious

2. See defendant's affidavit by Sander Landfield wherein it is projected that there may have been as many as 3,750,-000 odd-lot customers within the past four to six years.

**152**

practical financial limitations inherent in the circumstances here presented, proper notice as required almost certainly cannot be given—and plaintiff is short of the mark in his arguments to the contrary. Second, plaintiff's erroneous notion that individual notice to members of the class is not required by amended Rule 23 but that publication, either by "free publicity" or by paid advertisements in newspapers of national distribution, or by both, is sufficient, raises the suspicion, which may or may not be justified, that he is more interested in notice for the sake of undesirable solicitation of claims than for proper protection of the interests of the other members of the class. See Advisory Com. Note, 39 F.R.D. 107; Cherner v. Transition Electronic Corp., 201 F.Supp. 934 (D.C.Mass. 1962).

For reasons similar to those leading me to conclude that Eisen cannot fairly and properly represent the other members of the class, I am not satisfied that the questions common to the class predominate over questions affecting individual members. Rule 23(b) (3); see Advisory Com. Note, 39 F.R.D. 103. Mention has already been made of the tremendous size of the asserted class, the fact that there is no evidence that any other member has the slightest interest in this litigation and the necessarily varied nature and quantum of the interests of other odd-lot purchasers and sellers. In my view, these circumstances create a powerful presumption that questions affecting individual members predominate over questions common to the class, and plaintiff has offered little or nothing to rebut this presumption. Moreover, these factors plus the previously discussed difficulties of providing adequate notice to the huge class as required by the amended Rule and by concepts of due process suggest almost insuperable difficulties in fair and proper management of this suit as a class action.

The motion of defendants is granted to the extent that this action, as a class action, is dismissed. This does not mean, however, that the complaint viewed solely as a statement of the individual claims of plaintiff Eisen is dismissed; moreover, nothing herein stated should be construed as a ruling on the merits, or lack thereof, of the claims pleaded on behalf of plaintiff individually.

It is so ordered.