**452**

PHILADELPHIA ELECTRIC COMPANY
v.
ANACONDA AMERICAN BRASS
COMPANY et al.

CITY OF PHILADELPHIA et al.
v.
ANACONDA AMERICAN BRASS
COMPANY et al.

LINDY BROS. BUILDERS, INC. OF
PHILA. et al.
v.
ANACONDA AMERICAN BRASS
COMPANY et al.

The GENERAL STATE AUTHOR-
ITY et al.
v.
ANACONDA AMERICAN BRASS
COMPANY et al.

BRAZOS ELECTRIC POWER COOP-
ERATIVE et al.
v.
ANACONDA AMERICAN BRASS
COMPANY et al.

ROCKLEDGE HOMES, INC., et al.
v.
ANACONDA AMERICAN BRASS
COMPANY et al.

Civ. A. Nos. 41734, 41827–41829,
41831, 41835.

United States District Court
E. D. Pennsylvania.
Jan. 23, 1968.

See also, D.C., 275 F.Supp. 146.

Harold E. Kohn, Dilworth, Paxson, Kalish, Kohn & Levy, David Berger, Cohen, Shapiro, Berger, Polisher & Cohen, Philadelphia, Pa., for plaintiffs.

Frank J. Kelley, Atty. Gen., Maxine Boord Virtue, Asst. Atty. Gen., of Michigan, Lansing, Mich., for intervenor plaintiff.

Joseph W. Swain, Jr., Montgomery, McCracken, Walker & Rhoads, David F. Maxwell, Obermayer, Rebmann, Maxwell & Hippel, Robert W. Sayre, Saul, Ewing, Remick & Saul, Lewis H. Van Dusen, Jr., Drinker, Biddle & Reath, Samuel B. Fortenbaugh, Clark, Ladner, Fortenbaugh & Young, Arthur H. Kahn, Schnader, Harrison, Segal & Lewis, Henry T. Reath, Duane, Morris & Heckscher, Leonard J. Cook, Shapiro, Stalberg, Cook, Murphy & Kalodner, S. Gordon Elkins, Stradley, Ronon, Stevens & Young, John G. Harkins, Jr., Pepper, Hamilton & Scheetz, H. Francis DeLone, Oliver C. Biddle, Ballard, Spahr, Andrews & Ingersoll, Michael H. Malin, White & Williams, Philadelphia, Pa., Gaston, Snow, Motley & Holt, Boston, Mass., for defendants.

## OPINION

FULLAM, District Judge.

Ten related private actions for treble damages for alleged violations of the antitrust laws have been instituted in this district, against the same group of thirteen defendants. All of these suits stem from the indictments returned against most of the defendants in the United States District Court for the District of Connecticut in 1962. United States v. Anaconda American Brass Co. et al., Criminal No. 10,725 (September 12, 1962); and cf. United States v. Anaconda American Brass Co. et al., Civil No. 9543 (filed December 4, 1962).

Five of the ten lawsuits purport to be class actions, brought on behalf of three classes of plaintiffs. The question now before the court, under Fed.R.Civ.P. 23 (c) (1), is whether they may be maintained as class actions.

As alleged in the complaint the classes comprise those legal entities which have purchased the products specified (brass pipe, copper pipe, copper tubing, and condenser tubing; all designated generally under the label "brass mill tube and pipe") during the period in suit, and have suffered damage thereby as a result of the alleged conspiracy. The complaints divide these legal entities into the following three categories:

(1) "All state and municipal governments, governmental authorities and sub-divisions in the United States. * * *" (Nos. 41827 and 41829.) [Hereinafter referred to as the "Governmental" class.]

(2) "Non-profit cooperative membership corporations engaged in the supplying of electricity to their members in rural areas who receive their financing through the Rural Electrification Administration of the United States of America, an agency of the Department of Agriculture. * * * The said cooperative corporations are members of the National Rural Electric Cooperative Association. * * *"

(No. 41831.) [Hereinafter referred to as the "REA" class.]

(3) "Approximately 16,000 [later revised to 18,000] builders of home and apartment dwellings throughout the United States * * * who are in main, either individually or by their officers, parent, subsidiary, or affiliated corporations, builder members of the National Home Builders Association." (Nos. 41828 and 41835.) [Hereinafter referred to as the "Builders" class.]

These three proposed classes will be considered seriatim.

### I.

#### The Governmental class

Rule 23(a) prescribes four "pre-requisites to a class action", namely,

"[that] (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

The first of these requirements is undoubtedly met in the Governmental class; the membership of the alleged class is so numerous that joinder of all members in this action would be not only impracticable, but inconceivable.

Nor is there any present difficulty with the fourth requirement. The named plaintiffs include the cities of Philadelphia, Detroit, Buffalo, San Antonio, Austin (Texas), Brownsville (Texas), Lubbock (Texas), Bryan (Texas), and Garland (Texas); the Philadelphia Housing Authority, the General State Authority of Pennsylvania, the State Public School Building Authority of Pennsylvania, and Wayne County, Michigan. Applications to intervene have been filed on behalf of many other governmental bodies, including the States of Alaska, Michigan, Oregon and Wisconsin,

and still others have expressed an active interest in the matter. The named plaintiffs are represented by able counsel, thoroughly familiar with antitrust litigation. There is no reason to doubt that the interests of the class will be fairly and adequately protected. Any problems which may arise in this respect can be handled under Rule 23(d) (2) and (3), or by subsequent order under Rule 23(c) (1).

The remaining pre-requisites specified by Rule 23(a) are that "(2) there are questions of law or fact common to the class" and "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class." In addition, Rule 23(b) (3) provides that an action may not be maintained as a class action unless

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Thus, it is necessary to decide whether there are factual and legal issues common to the class and typified by the assertions of the named plaintiffs, and if so, whether these common questions predominate over those applicable only individually; and finally, whether a class action is superior to other possible devices.

## A. The existence and predominance of issues common to the class

The burden is on the plaintiffs to establish their right to maintain a class action. Polakoff v. Delaware Steeplechase and Race Ass'n, 264 F.Supp. 915 (D.Del.1966); Carroll v. Associated Musicians of Greater New York, 206 F. Supp. 462, 470 (S.D.N.Y.1962), aff'd 316 F.2d 574 (2d Cir.1963); Underwood v. Maloney, 14 F.R.D. 222, 227 (E.D.Pa. 1953). But this does not mean, as some of the defendants' argument seems to imply, that the plaintiffs must finally establish their entire case before a preliminary determination of the class-action question can be made.

In order to succeed in this action, plaintiffs will have to prove (1) that there was a conspiracy to fix prices in violation of the antitrust laws; (2) that prices were fixed pursuant thereto; and (3) that plaintiffs purchased products at prices which, as a result of the conspiracy, were higher than they should have been. All of these issues except the actual purchases by the various plaintiffs seem almost certain to be largely common to the entire class.

The defendants point out that the products mentioned in the complaint include "at least twelve separate groups of products which are separately priced and have distinct end uses"; that plaintiffs may have purchased like products from other manufacturers, at prices not shown to have been affected by the alleged conspiracy; that during the period covered by the alleged conspiracy there were dozens of price changes in each product-line; and that there were wide variations in methods of purchase and in prices actually paid. But these circumstances, it seems to me, demonstrate merely (1) the possible desirability of establishing sub-classes as the facts develop; (2) the likelihood that plaintiffs may be unable to prove all they claim; and (3) the fact that many of the issues relating to damages are individual rather than common to the class. Cf. Siegel v.

Chicken Delight, Inc., 271 F.Supp. 722 (N.D.Cal.1967); Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D.N.Y.1966); Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966).

■■ The overriding issues have to do with the existence of the alleged conspiracy and establishment of what the prices should have been. For obvious reasons, it would be improper for me to pre-judge these key issues. For the same reasons, it cannot be seriously suggested that plaintiffs must prove the conspiracy and all its ramifications before being permitted to maintain a class action.

Of course, more than a mere allegation may be required. Compare, Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y. January 3, 1968). It is enough for present purposes to state that the indictments, the sentences imposed thereunder, and some of the results of the discovery to date, together warrant a finding that plaintiffs' claim of conspiracy may have merit and is a genuine issue in this litigation.

I therefore have no difficulty in concluding that the requirements of predominant issues common to the class are met. On this aspect of the case, there is no reason to disregard the teachings of City of Philadelphia v. Morton Salt Co., 248 F.Supp. 506 (E.D.Pa.1965); City of Philadelphia v. Westinghouse Electric Corp., 1961 Trade Cases, ¶ 70,143 (E.D. Pa.1961); State of Illinois v. Brunswick Corporation, 32 F.R.D. 453 (N.D.Ill. 1963); as well as the unreported decisions in Western Farmers Electric Cooperative v. Sangamo, Civil Action No. 30824, (E.D.Pa. November 20, 1962); State of California v. American Pipe & Construction Co., Civil Action No. 43403, (N.D.Cal., March 30, 1966).

### B. The superiority of the class action device

The factors to be considered are

"(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Except for the additional cases in this district, all filed by cooperating counsel, there is no other litigation now pending, and no noticeable interest in separate actions, so that (A) and (B) require no discussion. The major factors are (C) and (D), both having to do with judicial housekeeping.

I do not propose to re-state here the views of the learned commentators who have thus far addressed themselves to the history, purposes, and probable future course of Rule 23(b) (3). See, e. g., Kaplan, "1966 Amendments of the Federal Rules of Civil Procedure (I)", 81 Harvard L.Rev. 356 (1967); Frankel, "Some Preliminary Observations Concerning Civil Rule 23", 43 F.R.D. 39 (1967); Note, "Class Actions Under New Rule 23 and Federal Statutes of Limitation: A Study of Conflicting Rationale", 13 Villanova L.Rev. 370 (1967).

■■ It is fair to state that the Rule allows for great flexibility and that the courts are just beginning to deal with its problems. Compare, School Dist. of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1001 (E.D.Pa.1967); Hirschi v. B & E Securities, Inc., 41 F.R. D. 64 (D.Utah, 1966); Eisen v. Carlisle and Jacquelin, 41 F.R.D. 147 (S.D.N.Y. 1966); with Kronenberg v. Hotel Governor Clinton, Inc., supra; Fischer v. Kletz, supra; Siegel v. Chicken Delight, Inc., supra, and Brennan v. Midwestern United Life Ins. Co., 259 F.Supp. 673 (N.D.Indiana, 1966). For these reasons, controlling precedents are lacking, and each case requires its own exercise of judgment. Aided by the foregoing cases and authorities, and by the Comments of the Advisory Committee (re-

printed at 39 F.R.D. 98–107) (1966), I have concluded that when it is established that there exists a genuine class of litigants pressing similar assertions, and that the common questions predominate, the proper function of the court is to apply the Rule in a manner best calculated to serve the following objectives:

(1) To process the large number of claims with the least possible strain upon the total resources of the court system; (2) To eliminate "one way intervention", and make known in advance which claimants and potential claimants can be expected to be bound by the judgment; (3) To avoid encouraging the solicitation of claims and similar unsavory practices;[1] (4) To avoid enlarging or shortening the applicable period of limitations; and (5) To advance, or at least not prejudice, recognized goals of public policy.[2]

These objective have some features of mutual inconsistency. The larger the potential class, the more advantageous it is for the litigants (on both sides), and the courts generally, to have common issues resolved finally in a single action. On the other hand, however, the larger the class, the more difficult the problems of management; particularly, at least in the early stages, problems of notice. Cf. School Dist. of Philadelphia v. Harper & Row Publishers, Inc., supra.

■ It is true that the whole concept of a large class-action might easily be stultified by insistence upon perfection in actual notice to class-members; and that courts should not be deterred from Rule 23 economies in litigation by exaggerating the presumed requirements of due process, or by the specter of an occasional successful collateral attack on the basis of due-process, (See, Frankel, "Some Preliminary Observations Concerning Civil Rule 23", 43 F.R.D. 39, 46–47). Nevertheless, courts should eschew

applications of Rule 23 so expansive in scope as to permit a return to one-way intervention under a new guise. The difference between "I will intervene if our side has already won" and "If I find out our side has lost I will collaterally attack the judgment on due process grounds" may not be very great.

■ The permissive-joinder approach under the former rule did have the advantage of making it possible, by establishing a cut-off date for interventions, to learn the likely dimensions of the litigation. But the disadvantages included limited protection against further litigation, and the (arguably) somewhat greater opportunity for claim-soliciting. I believe the advantages can be retained under the present rule. I see no reason why those class-members who do not elect exclusion from the class may not be required to take some kind of minimal affirmative action as a condition of ultimate recovery.

■ In the nature of things, it can be expected that many class members will remain passive. Under the old rule, their claims were neither adjudicated nor guarded against. Under the new rule, passive members will be bound by the judgment; but if they have no intention of proving their individual damages, it is to everyone's advantage to know it early. To bar the claims of the passive members unless within a reasonable period they file a brief statement of their intent to prove damages would reveal the true scope of the litigation, and would either greatly reduce the trouble and expense of any subsequent notices which may be required, or provide a basis for informed re-appraisal of the class-action question under 23(c) (1).

What constitutes a reasonable time, both for exclusion from the class under

---

1. Cf. Cherner v. Transitron Electronic Corp., 201 F.Supp. 934, 936 (D.Mass. 1962), 221 F.Supp. 48, 51, 52 (D.Mass. 1963); Eisen v. Carlisle and Jacquelin, supra.

2. Minnesota Mining & Manufacturing Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 318, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965).

23(c) (2) (A), and for the notice of intent referred to above, will undoubtedly vary from case to case; a shorter period would seem indicated for class actions filed near the expiration of the limitations period.

### 1. *Statute of Limitations*

January 4, 1967, was the final day for the institution of suit based upon the causes of action alleged. The Governmental class action and one of the Builders' actions were commenced on December 30, 1966. The REA action and the other Builders' action were commenced on January 3, 1967. As might be expected, diametrically opposite conclusions are urged by counsel as flowing from this factual situation.

On behalf of the plaintiffs, it is argued that this chronology demonstrates the superiority of a class action, since there now are no "other available methods" for adjudication of the controversy. The defendants argue, on the other hand, that to permit a class action under these circumstances would be to approve the resurrection of a lot of stale claims and the stirring-up of unwarranted litigation which would not otherwise have occurred to anyone; that under the circumstances it is highly unlikely that silent class members could have been relying on the class action as the vehicle for vindicating their rights; and that, from the standpoint of court congestion, the total avoidance of a large number of lawsuits is obviously "superior" to the class action here attempted.

Each of these arguments has its attractive features, but upon careful analysis, neither approach is persuasive. Plaintiffs should not be rewarded for delay in filing suit by a lowering of the standards for class action approval. On the other hand, however, the suggestion that the standards for class action approval should be more stringent for ac-

tions commenced near the expiration of the period of limitations, is equally unacceptable. Surely, it was not the intention of the Committee, the Supreme Court, or the Congress that the 1966 amendments to Rule 23 should have any effect upon the period of limitations established by Congress, 15 U.S.C. §§ 15b, 16(b), as amended. Any such purpose would run counter to the statutory prohibition against rules which "abridge, enlarge or modify any substantive right", 28 U.S.C. § 2072. The strong presumption of validity of these rules, Hanna v. Plumer, 380 U.S. 460, 461, 471, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), requires this court to apply the rule as written; but it neither requires nor permits a strained interpretation of the rule in a manner likely to rebut the presumption. To adopt the defense arguments would be virtually equivalent to holding that the limitations period is shortened, for class actions, by whatever period of time is required for the determination of the class action question.

The arguments of both sides as to the effect of the expiration of the limitations period are based in part upon the premise that absent members of the "class" would be permanently barred from asserting their claims in any other manner than as members of the class in these actions. There is reason to doubt the validity of this premise. At an earlier stage of this litigation, I concluded that the class action determination, whenever made, relates back to the date of filing. Philadelphia Electric Company v. Anaconda American Brass Company, 42 F.R.D. 324 (E.D.Pa.1967). Where the class action determination is affirmative, the court is merely declaring that the action may be "maintained" as a class action, and it seems reasonably clear that this determination relates back to the date of filing of the complaint.[3]

3. But cf, Note: "Class Actions Under New Rule 23 and Federal Statutes of Limitation: A Study of Conflicting Ra-

tionale", supra, which expresses the view that policy considerations could produce a different result, in some situations.

(For this reason, I reject the defendants' contention that an affirmative determination in these cases would constitute an invalid enlargement of the statute of limitations). But where the determination is negative, and a class action is, in the words of the Committee, "stripped of its character as a class action" (39 F.R. D. at p. 104), it does not necessarily follow that the case must be treated as if there never was an action brought on behalf of absent class members.

If the reason for the negative determination is failure to meet the prerequisites of 23(a) or even if the reason is that the common questions do not predominate over individual questions under 23(b) (3) it would seem reasonable to conclude that such negative determination also relates back to the filing of the complaint. If there never really was a class to be represented, members of the purported class can scarcely be heard to claim that they started suit, vicariously, before the limitations period expired. But if the reason for the negative determination stems from a weighing of various considerations of judicial housekeeping, it may well be that the decision should not relate back to the commencement of the action, and that, at the very least, an opportunity should be presented for proof of reliance upon the pendency of the purported class action sufficient to toll the statute of limitations. Any other approach would make it virtually mandatory for every class member to file a cautionary separate action within the limitations period. The larger and more cumbersome the class, the greater the likelihood of a "housekeeping" decision excluding some or all of the members from the class action, and the greater corresponding pressure to file parallel individual actions, or applications to intervene. This can hardly be regarded as consistent with the purpose of the Rule.

 Sub-division 23(c) (1) provides that the order on the class action question "may be conditional, and may be altered or amended before the decision on the merits." Cf. School Dist. of Philadelphia v. Harper & Row Publishers, Inc., supra. In most private antitrust litigation, the limitations period will have expired long before determination of the merits. Rule 23 should not be read as requiring that all modifications of the class action order under 23(c) (1) must be made before the expiration of the limitations period. There does not seem to be any valid reason why persons who were members of the class alleged in the complaint should be deprived of all recourse as a result of housekeeping modifications of the class action order. (However, it is neither necessary nor appropriate to reach a final decision on this question, as it has not yet been fully argued in the case.)

The limitations-period factor is not totally devoid of significance. In the application of new Rule 23 the courts are still in the exploratory stage, and I am aware that the views herein expressed as to the tolling of the statute of limitations and the continuing availability of intervention may or may not ultimately prove sound. There is, therefore, in the present cases somewhat less assurance of an opportunity to reconsider a ruling which would deny class-action status. It is for this reason that I do not feel bound to adopt precisely the same approach to the overall problems of 23(b) (3) as expressed in School Dist. of Philadelphia v. Harper & Row Publishers, Inc., supra, which was decided fairly early in the limitations period. Moreover, as mentioned above, the limitations question might well affect the length of time to be allowed for exclusion or filing a notice of intent.

### 2. Size of the class

 The problems of management of a class action embracing as plaintiffs, potentially, all state and local governments in the United States, are so plainly insurmountable as to require no further comment. Clearly, the alleged class would have to be reduced in some fashion

to more nearly manageable proportions. Contrary to plaintiffs' argument, I agree with the conclusion of Judge Kraft that difficulties in promulgating the notice required by Rule 23(c) (2) is a factor which may properly be considered in weighing the feasibility of management of the proposed class action. School Dist. of Philadelphia v. Harper & Row Publishers, Inc., supra.

■ I regard difficulties in devising an adequate system of notice as within the category of judicial housekeeping considerations, and not as necessarily demonstrating the lack of a genuine class of litigants, or the inadequacy of representation under 23(a) (1). Thus, I consider the present cases distinguishable from Eisen v. Carlisle and Jacquelin, supra. In the cited case, a single investor tried to bring a class action against the New York Stock Exchange and certain of its member firms on behalf of all persons who either bought or sold "odd-lots" on the Exchange. Estimates as to the size of the potential class ranged from 100,000 to as high as 3,750,-000 persons. The court expressed the view that notice by advertisement would not be sufficient under the circumstances, that it was unlikely that any acceptable method of notification could be devised, and that the plaintiff was therefore shown to be incapable of adequately protecting the interests of the members of the alleged class. In the present case, the number and size of the various governmental units which have already entered the fray establishes the adequacy of representation; I am concerned only with potential difficulties of management.

It should also be borne in mind, as noted above, that a major factor which will determine whether the case is manageable as a class action is presently unknown; it is not presently possible to estimate with any degree of accuracy the total number of class members who will remain in the action, and who will actually present and prove claims for damages.

■ I believe it is possible to reduce the likely difficulties of management to a tolerable level. By analogy to concepts of diversity jurisdiction and venue, viewed in conjunction with the Rule's express recognition of concentration of litigation as a factor, I consider it appropriate to limit the definition of the class by setting up criteria of size of population served, area, and proximity to this district.

■ In light of the foregoing considerations, I have concluded that these actions may be maintained as class actions on behalf of a governmental class consisting of the following: (1) all governmental entities (as elaborated in the complaint) within the territory comprising the Eastern District of Pennsylvania; (2) all state governments, and all governmental entities having state-wide jurisdiction (whether acting in their own right, or in a representative capacity as permitted by applicable state law); and (3) all cities in the United States having a population, as of the 1960 Federal census, in excess of 50,000, and all school districts and public building authorities within such cities. These definitions are subject to revision as the litigation progresses.

The parties will be required to submit a proposed program of notification, together with proposed form of notice, within fifteen days. Such notices should, of course, be neutral and objective in tone, and should neither promote nor discourage the assertion of claims. In addition to meeting the requirements of 23(c) (2), the notices should contain a show cause order with respect to adequacy of representation, and should include a notice that members of the class not electing to be excluded therefrom will be required to file proofs of claim on or before a specified date, or be forever barred.

Governmental entities which are included within the description of the class in the complaints as filed, but which would not fall within the definition of the class herein prescribed, will be per-

mitted to attempt to intervene within the same period prescribed for the filing of proofs of claim by class members, but counsel will be directed not to communicate, directly or indirectly, with any such former class member which has not already heretofore expressed, in writing, a desire to participate in the litigation.

## II.

### The "REA" class

█ There are 43 possible members of this class, but it appears likely that not more than 25 made substantial purchases of the products involved. The defendants contend that this number is so small that individual joinder would have been practicable, and thus the pre-requisites of 23(a) (1) are not met. I reject this argument. While 25 is a small number compared to the size of the other classes being considered, it is a large number when compared to a single unit. I see no necessity for encumbering the judicial process with 25 lawsuits, if one will do.

█ I therefore find that the common questions predominate and that a class action is superior and should be permitted under Rule 23(b) (3). An Order will be entered accordingly.

## III.

### The Builders class

The class alleged under this category presents serious problems of definition. As alleged in the complaint, the proposed class is too amorphous to be regarded as a class. It does not consist of all home builders who purchased the products in question during the appropriate period and were damaged by the alleged conspiracy, but merely "approximately" 18,000 of them. It is not limited to builder-members of the National Home Builders Association; the complaint merely alleges that the class members are "in the main" associated with that organization in some fashion. Moreover, the alleged relationship between most of the class members and the Na-

tional Home Builders Association seems so vague as to be meaningless.

In subsequent documentation (plaintiffs' memorandum of contentions, paragraph seven; plaintiffs' seeming adoption of the affidavit of Michael A. Cooper, filed by defendants) an attempt is made to solidify the definition of this class as being limited to "operative builders, who plan and execute the construction of dwellings on their own land and at their own risk for sale or rent to others * * * and who are sometimes referred to as developers", in contrast to owners who build for non-commercial purposes, general contractors who do not build on their own account, and manufacturers of pre-fabricated homes.

Even as thus clarified, the definition of this class leaves much to be desired. Moreover, there is less occasion for confidence in the adequacy of representation here than in the Governmental class. In Civil Action No. 41828, there are three plaintiffs, and four additional plaintiffs seeking to intervene; in Civil Action 41835, there are ten named plaintiffs. Whether these seventeen named plaintiffs can be regarded as adequately representing the more than 18,000 members of the class is not a matter of numerical comparison alone. But I am inclined to believe that more rigid requirements of representation should be imposed in alleged classes made up of members who, in everyday life, are likely to be in active competition with each other in matters closely related to the subject matter of the litigation. Compare Keefe, Levy & Donovan, Lee Defeats Ben Hur, 33 Cornell Law Quarterly, 327, 349–350 (1948), with Weinstein, Revision of Procedure, Some Problems in Class Actions, 9 Buffalo Law Review, 433, 459 (Note 113) (1960), and the comments of Professor Kaplan thereon in 1966 Amendments of the Federal Rules of Civil Procedure, 81 Harvard Law Review, 356, at page 382, as to the effect of a pre-existing "bond of association"

as enhancing the desirability of a class action. The possibility of conflicting interests is much less likely in the Governmental and REA classes.

The numbers problem is greater with respect to the proposed builders class than with any of the other classes, and the problems of identification and notice, without resorting to the kind of publicity which would be likely to have ambulance-chasing connotations, are indeed perplexing. The members of this purported class are not public agencies or institutions, and there is thus somewhat less reason for straining court resources to permit this kind of class action.

 Accordingly, it is my opinion that, if a class action is to be permitted at all, it should be limited to those "operative builders" whose building operations occurred within the Eastern District of Pennsylvania. Moreover, the order permitting maintenance of the action on behalf of this limited class will be expressly conditioned upon the submission, within fifteen days, of a list of the potential members of this limited class, or of the methods proposed for ascertaining the identity of such potential members of the class.

 Inasmuch as these limitations are being imposed for housekeeping reasons, an opportunity to seek intervention will be permitted, but with the same prohibition against counsel's communicating with potential intervenors who have not thus far expressed, in writing, their interest in the litigation.

### ORDER

And now, this 23rd day of January, 1968, pursuant to Fed.R.Civ.P. 23(c) (1), it is hereby ordered:

1. That this action may be maintained as a class action under Fed.R.Civ.P. 23(b) (3) on behalf of a class of plaintiffs comprising the following categories:

(a) All state governments, and all governmental agencies, authorities and entities having state-wide jurisdiction (whether in their own right, or in a representative capacity as permitted by state law), in the United States, which have purchased the products stated in the complaint, during the period in suit, and have thereby suffered damage as a result of the conspiracy alleged in the complaint.

(b) All cities in the United States having a population (according to the 1960 Federal census) of 50,000 or more, and all school boards and public building authorities within such cities, which have made purchases and suffered damage as set forth in (a) above.

(c) All municipal governments and governmental entities within this judicial district (the Eastern District of Pennsylvania) which have made purchases and suffered damage as set forth in (a) above.

2. That this Order shall not be deemed to prohibit the filing of applications for intervention in this action on the part of governmental entities included in the class described in the complaint but excluded hereby from participation as class members.

3. That all counsel in this action are hereby prohibited from initiating, directly or indirectly, any communication with any of the excluded entities referred to in paragraph (2) above, concerning this litigation, except in the case of those entities which have heretofore expressed, in writing, a desire to participate in this litigation.

4. That counsel are also prohibited from initiating, directly or indirectly, any such communication with members of the class of plaintiffs set forth in paragraph (1) above, except with leave of Court pursuant to the program of notification which will hereafter be adopted. This prohibition shall not apply with respect to named plaintiffs or other class members which have heretofore expressed, in writing, an interest in this litigation.

5. Counsel are directed to submit to this Court, within ten (10) days from this date, an outline of a proposed method of compliance with the requirements of Fed.R.Civ.P. 23(c) (2), including a proposed form of notice. Copies of such proposals shall be furnished to opposing counsel, and objections and comments may be filed within five (5) days thereafter.