**Morton EISEN, on behalf of himself and all other purchasers and sellers of "odd-lots" on the New York Stock Exchange, similarly situated, Plaintiff,**

v.

**CARLISLE & JACQUELIN and DeCoppet & Doremus, each limited partnerships under New York Partnership Law, Article 8, and New York Stock Exchange, an unincorporated association, Defendants.**

No. 66 Civ. 1265.

United States District Court,
S. D. New York.

Oct. 8, 1970.

Mordecai Rosenfeld, New York City, for plaintiff.

Carter, Ledyard & Milburn, New York City, for Carlisle & Jacquelin.

Kelley, Drye, Warren, Clark, Carr & Ellis, New York City, for DeCoppet & Doremus.

Milbank, Tweed, Hadley & McCloy, New York City, for New York Stock Exchange.

## OPINION

TYLER, District Judge.

This court originally determined that this case was not an appropriate class action under Rule 23 of the Federal Rules of Civil Procedure. Eisen v. Carlisle & Jacquelin, 41 F.R.D. 147 (S.D.N.Y.1966). That decision was reversed by the Court of Appeals and remanded for further consideration of factors governing the propriety of a class action. Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968). Pursuant to the Court of Appeals opinion and after a long delay having no relevance to the issues,[1] discovery, conferences and hearings have been conducted to develop the information needed for reconsideration and decision. Upon consideration and reconsideration of all of the materials presented to the court, however, I am reluctantly constrained to say that certain missing

---

1. Plaintiff's original attorneys were obliged to withdraw from the case because of a conflict of interest; many months elapsed before new counsel was substituted.

pieces of information have yet to be supplied before the class action picture is complete. Put differently, I am unable to conceive of a solution of this extraordinary issue upon the present record which does not work a clear injustice upon one or the other of the parties; we have not yet clearly avoided the problem described by the appellate court in the following language:

> "In this particular case, with its millions of possible claimants, we think it would be most amiss to let the case go ahead until it becomes hopelessly entangled in a mass of procedural detail and expense from which it may not be easy or even possible to extricate it with justice to the parties by the simple means of deciding at a later day that the order permitting the case to proceed as a class action was improvidently granted." Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 570 (2d Cir. 1968).

Admittedly, some of the determinations necessary for the class action decision can be resolved with the information since provided by the parties, largely in the form of two stipulations. Nevertheless, the crucial issues of manageability and notice remain little more than questions; further facts not within the knowledge of the undersigned must, if possible, be gleaned with further efforts and assistance of counsel.

## I.

Before the question of manageability can be resolved, certain mechanical problems of administration of this class action must be addressed. For example, will the appointment of a special master be required, and if so, what fee will be required? In processing claims, how much paper work, printing and postage is likely to be required and at what expense? What procedures should be used for intervention by other class members? What procedures should be adopted for individual class members to file claims and, more importantly, to prove the claims? Obviously, any expense figures will have to be estimates, and these estimates may be based on the experience of other courts in other cases, but figures should be related to the realities of the present case insofar as is practicable, with full understanding that others not here mentioned may occur to astute counsel.

Also directly related to the manageability issue, the court must be assured that damages can in fact be computed if liability should be determined. Is it possible to fashion a formula for determining damages which will be applicable to the entire class as a single entity, or to appropriate subclasses as entities? If such a formula is not possible, will it be feasible to compute damages on the basis of claims filed by individual class members; approximately how many claims will have to be filed in order for such a procedure to be financially practicable?

If damages are to be determined on the basis of individual claims filed, the sending of some form of notice to the class must be assumed. Thus, the cost of such notice will have to be considered in determining how large a response will be required before the procedure will be financially practicable.

The court has considered plaintiff's proposed formula for distribution of any recovery which might result from the action. With a bow to the ingenuity of plaintiff's counsel and without commenting on the merits of the proposal, this action has not yet reached that stage. Before methods of distribution of damages can be considered, the court must first, and at this early stage, be certain that such a sum or sums may be fairly and accurately computed in the first place. Thus, the parties should address themselves to this question in detail.

## II.

The second major issue remaining in the class action determination is that of notice. Counsel, of course, have already

discussed the question of notice, but there are still some details which should be filled in. If individual notice is to be sent only to those class members who "may possess enough of a stake in the proceedings to justify personal intervention", Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 569 (2d Cir. 1968),[2] how may those persons be identified and what is an appropriate cut-off point among the approximately 2,000,000 identifiable members for determining who will receive individual notice and who will not? What would be the approximate cost of various size advertisements in newspapers of national distribution? With reference to plaintiff's proposal for an enclosure in the periodic statements of brokerage houses to their customers and taking into account the probable size of an appropriate notice, what would be the cost to individual brokerage houses of printing and inserting such an enclosure? Specifically what "obligations", if any, do the New York Stock Exchange and member firms have to customers which would justify the use of such a procedure?

In summary, this court is unable to decide upon the present record the class action motion at this time, and this memorandum should in no way be construed as even a tentative view on the merits of that question. Further information from the parties will be required so that all possible aspects of the class action may be examined and determined. Accordingly, counsel are directed to appear at a conference in Room 2704 on October 16, 1970 at 12:00 Noon in order to discuss the matters set forth above and any other items they deem pertinent to the class action determination. It is so ordered.

---

2. As I see it, the problem of notice is infinitely compounded in this case by the Rule provision that members desiring to "opt out" must reply in writing to that end. Rule 23(c) (2), F.R.Civ.P. Given (1) the mass of mail solicitations in the United States and (2) the known habit of the citizenry to "toss" such mail, one can be fairly certain that most specific individual notice will furnish little information concerning what members are truly concerned with the issues in this litigation.