**In re Coordinated Pretrial Proceedings in ANTIBIOTIC ANTITRUST ACTIONS.**

No. M 19–93A
and the following actions:
68 Civ. 4343, 69 Civ. 776, 68 Civ. 4264, 69 Civ. 839, 68 Civ. 2370, 69 Civ. 798 and 69 Civ. 3194.

United States District Court,
S. D. New York.
Feb. 9, 1971.

See also D.C., 333 F.Supp. 274.

---

## OPINION

### (Government Entity Class Actions)

MILES W. LORD, District Judge (By Assignment).

Alleged antitrust violations by five corporate defendants [1] in the marketing of broad spectrum antibiotics are the subject of approximately 114 actions filed in this district or transferred here pursuant to 28 U.S.C. § 1407.[2]   All of

---

1. The defendants are American Cyanamid Co., Bristol-Myers Co., Chas. Pfizer & Co., Squibb-Beechnut, Inc., and The Upjohn Co.

2. See In re Antibiotic Drug Litigation, 295 F.Supp. 1402 (Jud.Pan.Mult.Lit.1968) ; 297 F.Supp. 1126; 299 F.Supp. 1403; 301 F.Supp. 1158; 303 F.Supp. 1056; 309 F.Supp. 155.

these actions were originally assigned to the Honorable Inzer B. Wyatt. Settlement has been reached in a number of these actions. Forty-three states, their governmental subdivisions and individual consumers have accepted a settlement offer from the defendants, as have a national class of wholesaler-retailers. State of West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710 (S.D.N.Y.1970). In addition a settlement was recently reached by the defendants and a national class of private hospitals and Blue Cross plans. Recognizing the demanding nature of the task before Judge Wyatt in supervising the settlement proceedings, the Judicial Panel on Multidistrict Litigation reassigned the remaining nonsettling cases to this judge for the completion of pretrial proceedings, In re Antibiotic Drug Litigation, 320 F.Supp. 586 (Jud.Pan.Mult.Lit.1970). Among these nonsettling cases [3] are the seven above-captioned actions brought by the states of California, Hawaii, Kansas, North Carolina, Oregon, Utah and Washington.

These states, like the states which accepted the defendants' settlement offer, make purchases of broad spectrum antibiotics for their own use and similar institutional purchases were made by the counties, cities, public hospitals and other government entities within each state. Each of the states now seeks to represent a class composed of themselves and all other government entities within their jurisdiction similarly situated.[4] The court is convinced that the proposed government entity classes, led by the states, satisfy the prerequisites of Rule 23 and the motions for establishment of these classes are granted.

### I. Requirements of Rule 23(a).

The proposed classes of government entities within each state are sufficiently numerous that joinder is impracticable, and the claims of each of the states are typical of the class. The states, through their attorneys general, are also the natural representatives of the class and will undoubtedly provide fair and adequate representation to the class. State of Illinois v. Harper & Row Publishers, Inc., 301 F.Supp. 484, 487 (N.D.Ill.1969); State of Minnesota v. United States Steel Corp., 44 F.R.D. 559, 565–566 (D.Minn.1968); Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 456 (E.D.Pa.1968); State of Iowa v. Union Asphalt & Roadoils, Inc., 281 F.Supp. 391, 401–402 (S.D.Iowa 1968). We do not understand defendants to dispute these conclusions.

### II. Requirements of Rule 23(b) (3) [5]

This leaves for discussion the requirements that there be questions of law or fact common to the class which predominate over any individual questions and that the class action be superior to other methods of adjudicating the controversy.

### A. Existence and Predominance of Common Questions

The elements which the plaintiffs must prove to recover from the defendants are: (1) that the defendants did

3. The non-settling cases may be divided, somewhat arbitrarily, into the following categories:
    1. Actions by states and other governmental entities
    2. Actions by those dealing in or using broad spectrum antibiotics in agricultural applications
    3. Actions by competitors of the defendants in the production of broad spectrum antibiotics
    4. Actions by a miscellaneous group of plaintiffs, including foreign governments, insurers, and individuals and wholesaler-retailers who opted out of the national classes.

4. The states' motions seeking retail consumer classes and authorization of *parens patriae* causes of action will be dealt with in a separate opinion.

5. Neither plaintiffs nor defendants have urged that these actions be evaluated under Rule 23(b) (1) or (2) and no decision is necessary on those questions.

violate the antitrust laws by fixing prices at a higher level than would otherwise have occurred, (2) that plaintiffs were injured by the defendants' price fixing and (3) the amount of damage sustained as a result of the defendants' violations. *See* Philadelphia Elec. Co. v. Anaconda Am. Brass Co., *supra,* 43 F.R.D. at 457.

The defendants admit, as they must, that the questions of their violation of the antitrust laws is common to these actions. As we read their arguments, however, they do contend that the question of the fact of damage to the plaintiffs in a treble damage action, as well as the amount of damages suffered by each plaintiff, is an individual question which cannot be tried on a class-wide basis and that common questions of fact cannot be said to predominate.[6]

The case law contradicts the arguments of the defendants. The cases conclude that all aspects of the liability question, including the fact of damage to the plaintiff class, are common questions appropriate for resolution on a class-wide basis. City of Philadelphia v. Emhart Corp., 50 F.R.D. 232, 235 (E.D.

Pa.1970); State of Illinois v. Harper & Row Publishers, Inc., *supra,* 301 F.Supp. at 488–489; State of Minnesota v. United States Steel Corp., *supra,* 44 F.R.D. at 568–571; State of Iowa v. Union Asphalt & Roadoils, Inc., *supra,* 281 F.Supp. at 401–402; Philadelphia Elec. Co. v. Anaconda Am. Brass Co., *supra,* 43 F.R.D. at 457–458. *See* Gold Strike Stamp Co. v. Christensen, 436 F.2d 791 (10th Cir. 1970) (denying mandamus to stay a class action order after concluding that the question of the effect of an illegal price discrimination on competition under the Robinson-Patman Act was common to the class and litigable through the representative parties). *But cf.* Chicken Delight, Inc. v. Harris, 412 F.2d 830 (9th Cir. 1969) (granting a writ of mandamus directing the deletion from a Rule 23(c) (2) notice of reference to a resale price maintenance question as one common to the class.)[7] These cases also hold that these common liability questions predominate over any remaining individual questions.

### B. Superiority of the Class Action

■■ Before allowing a class action to proceed, the court must determine

---

6. These contentions are contained in papers filed in opposition to the proposed retail consumer class, but are phrased in terms equally applicable to the government entity class. For example the defendants state:

"It necessarily follows that [since fact of damage is a predicate to liability] a judgment of liability could run in favor only of those class members who have come forward before trial to prove in some fashion that they have suffered the requisite injury. Even if we assume for the moment that the issue of 'violation' could be separately tried with only the class 'representatives' present on the plaintiffs' side, and even if plaintiffs should somehow prevail, such a proceeding could achieve nothing more than a finding or conclusion that a violation had occurred. Proof of the statutory cause of action created by Section 4 of the Clayton Act would still require one or more further trials to determine whether the in-

dividual class members had sustained injury as a consequence of that violation, and any judgment would run only in favor of those who carried the burden of proving that injury to themselves." In another section they maintain that "Rule 23 requires that each class member come forward with his claim prior to trial." The real thrust of these arguments is in opposition to treatment of the amount of damage issue on a class-wide basis, a question it is not necessary to reach here.

7. Since we hold that the issues of price-fixing liability including the fact of damage to the class are common to the class and predominate over the remaining questions, and since there are no management problems in classes herein established, it is unnecessary to consider the further possibility that the quantum of damages to the class might be proven through class representatives. *Cf.* Eisen v. Carlisle & Jacquelin, 50 F.R.D. 471, 472 (S.D.N.Y.1971).

that it is "superior to other available methods for the fair and efficient adjudication of the controversy," taking into consideration four criteria listed in the rule as pertinent to this finding. The individual members of the proposed classes have little interest in pressing their relatively small claims in the absence of a class action and it is unlikely these claims could be vindicated in any other manner. And, as was noted in State of Illinois v. Harper & Row Publishers, Inc., *supra*, 301 F.Supp. at 489–490, the class action will further promote the "desirable economies of time, effort and expense" begun by the transfer of these cases here under 28 U.S.C. § 1407. The other advantages of class determination of antitrust price fixing questions to both plaintiffs and defendants have been explored elsewhere and are not questioned by the parties, and need not be restated here. State of Illinois v. Harper & Row Publishers, Inc., *supra*, at 489–492; State of Minnesota v. United States Steel Corp., *supra*, 44 F.R.D. at 572; State of Iowa v. Union Asphalt & Roadoils, Inc., *supra*, 281 F. Supp. at 402–403; *see* Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir. 1968); Hohmann v. Packard Instrument Co., 399 F.2d 711, 714–715 (7th Cir. 1968).

Although the administration of these actions on behalf of government entities will not be simple, they certainly cannot be characterized as unmanageable. Whatever difficulties are encountered, and with the aid of counsel those should be few, "[t]o process the pending litigation and most of the remaining active, inactive and the potential litigation by a large number of separate trials would 'raise administrative difficulties far exceeding those present in this class action.'" Technograph Printed Circuits, Ltd. v. Methodee Electronics, 285 F.Supp. 714, 724–725 (N.D.Ill.1968); State of Minnesota v. United States Steel Corp., *supra*, 44 F.R.D. at 572; State of Iowa v. Union Asphalt & Roadoils, Inc., *supra*, 281 F.Supp. at 403.

## III.   *Rule 23(c) (2) Notice*

Since these classes are small and the members easily identifiable, it is practicable for the notice requirement by Rule 23(c) (2) to be served by mail on each class member, within each state. The parties are directed to draft such a notice for the court's approval and each of the plaintiff states is directed to secure the names and addresses of the members of the class it represents in preparation for the mailing. Penalty free envelopes may be used by the plaintiffs who will be responsible for all other costs involved in preparing, mailing, receiving and processing these notices.

The parties have apparently agreed that it is necessary for each class member to "make an appearance for the purpose of defining their claims." The court believes that this can be accomplished, at least for the present, by attaching a proof of claim form to the (c) (2) notice which could be detached, completed and returned by each class member. This procedure would provide the court and parties with basic information concerning the claim. Troublesome claims could be isolated on the basis of the information received. At that time it would be appropriate to decide whether a personal appearance by the class member was necessary. The notice form itself should inform the class members that their claims will be barred unless they complete and return the proof of claim form within the prescribed time or unless they "opt-out" of the class.

While not required by Rule 23, and clearly inappropriate where the class is large and the individual claim small, it appears that, in this instance, the proof of claim form is a useful device. This requirement was apparently first imposed in Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 459 (E.D.Pa.1968), where the court felt the requirement "would reveal the true scope of the litigation,

and would either greatly reduce the trouble and expense of any subsequent notices which may be required, or provide a basis for informed re-appraisal of the class-action question under 23(c) (1)." The same requirement was imposed in several later cases involving similar classes of government entities. State of Minnesota v. United States Steel Corp., 44 F.R.D. 559; State of Iowa v. Union Asphalt Roadoils, Inc., *supra*, 281 F.Supp. at 403–404.

These government entity cases all involved classes with readily identifiable members whose purchases can be ascertained and where claims are sufficiently large to make the expense of this procedure justifiable. *Cf.* Korn v. Franchard Corp., 50 F.R.D. 57 (S.D.N.Y.1970).

CLASS ACTION ORDER NO. 71–4

ORDER DETERMINING THAT CERTAIN ACTIONS ARE TO BE MAINTAINED AS CLASS ACTIONS ON BEHALF OF CLASSES OF GOVERNMENT ENTITIES

This matter comes on before the court upon the motions of the various plaintiff states in the actions listed on the caption hereof, for orders determining that their respective actions be maintained as class actions on behalf of classes of government entities within their confines under Rule 23, F.R.Civ.P.

The court has considered the records and files herein, including the said motions for class action determination, the memoranda and affidavits filed by the parties in support and opposition thereto, the proposals filed by various plaintiffs at the request of the court and of their own volition, the transcripts of earlier proceedings relating to these motions, and related motions filed therein, and the court is fully advised in the premises. Now, therefore, after due consideration the court finds:

A. The members of the class defined below are so numerous that joinder of all members of any such class in the same action is impracticable.

B. There are questions of law and fact common to such class.

C. The claim of each of the representative parties designated below is typical of the claims of the class represented.

D. Each state party plaintiff to the actions listed in the captions hereof is determined to be the proper representative of its class here established and will fairly and adequately represent its class.

E. With respect to the class designated below, the questions of law and fact common to the members of the class predominate over any questions of law or fact affecting only individual members.

F. These class actions are superior to other available methods for the fair and efficient resolution of the controversies.

G. The notices required to be given under the Rule can be given in such a manner as to satisfy the requirements of constitutional due process.

It is therefore, ordered that each of the actions listed in the caption hereof is, from the date of this Order, to be maintained as a class action under F.R. Civ.P. 23(b) (3) by the state plaintiff commencing each action for itself and as representative party for the following class:

The state, its departments, agencies, hospitals, institutions and political subdivisions and all counties, cities and other governmental entities within the state (other than those of the federal government), including without limitation hospital districts, hospitals and other institutions supported in whole or in part by state, county, city or local governmental funds, which purchased or paid for broad

spectrum antibiotic products during the period 1954 through 1966.

It is further ordered that

(1) Within ten days of the filing of this Order, the plaintiff states shall present a plan for giving notice to the class and proposed form of notice to the class and attached proof of claim designed to meet the requirements of Rule 23(c) (2) and which shall indicate to the class members that unless they "opt-out" or file a proof of claim form within a fixed time, their claims will be barred.

(2) Within ten days thereafter the defendants shall file with the court and serve upon the plaintiffs their suggestions and objections, if any, to the forms of notice and proof of claim submitted.

(3) Within fifteen days of the approval by the court of a proposed form of notice and proof of claim, the notice and attached proof of claim form shall be transmitted to the plaintiffs' classes by their respective Attorneys General.

(4) Within 15 days after the expiration of the time for filing of the proof of claim forms the Attorneys General shall file with the court and make available to the defendant the responses and proof of claim forms received from the members of the class.

It is further ordered that any orders entered by any of the transferor courts prior to transfer under 28 U.S.C. § 1407 which are inconsistent with the provisions of this Order are hereby vacated.

It is further ordered that this court does hereby retain jurisdiction under Rule 23(c) (1) to correct, modify, annul, vacate and supplement this Order from time to time before the decision on the merits of the common questions as it may deem proper.

## CLASS ACTION ORDER NO. 71–6

### ORDER AMENDING DEFINITION OF CLASS REPRESENTED BY STATE OF HAWAII

On February 9, 1971, Class Action Order No. 71–4, *supra* was entered in the above captioned action determining that it was to be maintained as a class action on behalf of a class of government entities within the state. Upon consideration of the record in this action and of the prior opinion approving the proposed compromises of certain related antitrust cases, West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710 (S.D.N.Y.1970), it appears that the City and County of Honolulu has accepted an offer of settlement from the defendants on its own behalf of all individual purchasers within its confines.

It is therefore ordered that, pursuant to Rule 23(c) (1), Fed.R.Civ.P., the definition of the class of government entities in the order of February 9, 1971, as it pertains to the above-captioned action by the State of Hawaii, is amended to read:

The state, its departments, agencies, hospitals, institutions and political subdivisions and all counties, cities and other governmental entities within the state (other than those of the federal government and the City and County of Honolulu), including without limitation hospital districts, hospitals and other institutions supporting in whole or in part by state, county, city or local governmental funds, which purchased or paid for broad spectrum antibiotic products during the period 1954 through 1966.