**HARTFORD HOSPITAL and other plaintiffs named in twenty-seven actions now consolidated, Plaintiffs,**

v.

**CHAS. PFIZER & CO., Inc., American Cyanamid Company, Bristol-Myers Company, Olin Mathieson Chemical Corporation, and The Upjohn Company, Defendants.**

**No. 69 Civ. 755, and twenty-six other private hospital and Blue Cross actions now consolidated.**

United States District Court, S. D. New York.

April 21, 1971.

Breed, Abbott & Morgan, New York City, for plaintiffs Associated Hospital

Service of New York, and others, Hospital Service Corp. of R. I., and others, Blue Cross of Northeast Ohio, and others, Conn. Blue Cross, Inc., and Blue Cross of Western Pa., and others.

Harold E. Kohn, P. A., Philadelphia, Pa., for plaintiffs Fort Pierce Memorial Hospital, and others, and Haverford Hospital Corp., and others.

Schwartz & Alschuler, Beverly Hills, Cal., for plaintiffs American Medical Enterprises, Inc., and others.

Shea, Gallop, Climenko & Gould, New York City, for plaintiffs Beekman-Downtown Hospital, and others.

Arnold & Porter, Washington, D. C., for plaintiffs Hartford Hospital, and others.

Foster, Vogel & Stroh, St. Louis, Mo., for plaintiffs Christian Hospital of St. Louis, and others.

R. Coleman Endicott, Lexington, Ky., for plaintiffs Clark County Hospital Association, Inc., and others.

Graham & Graham, Zanesville, Ohio, for plaintiff The Bethesda Hospital Assn.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiffs Blue Cross Assn., Inc., and others.

Palmer, Dodge, Gardner & Bradford, Boston, Mass., for plaintiffs Massachusetts Blue Cross, Inc., and others.

Lex Hawkins, Des Moines, Iowa, for plaintiffs Burlington Hospital, and others.

Steiner, Crum & Baker, Montgomery, Ala., for plaintiffs Jackson Hospital and Clinic, Inc., and others.

Cochrane & Bresnahan, St. Paul, Minn., for plaintiffs, St. Luke's Hospital, and others.

Kelly, Black, Black & Kenny, Miami, Fla., for plaintiff Cedars of Lebanon Hospital Corp.

Sager, Silverman, Bodne & Burns, Miami, Fla., for plaintiffs Plantation General Hospital, Inc. and North Miami General Hospital, Inc.

Harrison, Strick & Myers, Phoenix, Ariz., for plaintiffs Arizona Foundation for Neurology and Psychiatry, and others.

Boyer, Donaldson & Stewart, Wichita, Kan., for plaintiffs The Kansas Hospital Association, and others.

Schlifkin & Berman, Chicago, Ill., for plaintiff Northwest Hospital, Inc.

Erickson & Sederstrom, Omaha, Neb., for plaintiff Immanuel, Inc.

Culp, Dwyer, Guterson & Grader, Seattle, Wash., for plaintiffs Washington State Hospital Association, and others.

Paul D. Scanlon, McLean, Va., for plaintiffs The French Hospital of Los Angeles, and others.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant Chas. Pfizer & Co., Inc.

Donovan Leisure Newton & Irvine, New York City, for defendant American Cyanamid Co.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant Bristol-Myers Co.

Cravath, Swaine & Moore, New York City, for defendants Olin Mathieson Chemical Corporation and Squibb Beech-Nut, Inc.

Covington & Burling, Washington, D. C., for defendant The Upjohn Co.

WYATT, District Judge.

This is an application by defendants and by plaintiffs in 19 of these actions, which 19 actions are class actions, for approval of a proposed compromise under which the actions and all claims of the classes therein will be settled and dismissed with prejudice. Fed.R.Civ.P. 23 (e). The application is granted and the proposed compromise is approved.

These are 27 civil actions, 8 of which were commenced in this District and 19 of which were transferred to this District by the Judicial Panel on Multidistrict Litigation (the Panel) "for coordinated or consolidated pretrial proceedings" (28 U.S.C. § 1407; see In re Antibiotic Drugs, 295 F.Supp. 1402, 299 F.Supp. 1403, 301 F.Supp. 1158). The 19 civil actions which are the subject of the present application are sometimes referred to in this opinion as simply "the class actions".

The same five companies are defendants in each of these actions (Squibb Beech-Nut, Inc. is also a defendant in some actions); they may be referred to as Pfizer, Cyanamid, Bristol, Squibb (a division of defendant Olin Mathieson Chemical Corporation until about January 1, 1966 and ultimately a part of Squibb Beech-Nut, Inc.), and Upjohn. They have been for some years sellers of broad spectrum antibiotic drugs, the most important of which is tetracycline and on which a patent, owned by Pfizer and often called "the Conover patent", issued on January 11, 1955. Pfizer, Cyanamid and Bristol made tetracycline and sold it in dosage form. Bristol sold tetracycline in bulk to Squibb and Upjohn which sold it in dosage form.

Antibiotic drugs are prescription drugs used for infectious diseases. Broad spectrum antibiotic drugs, such as tetracycline, are effective against a wider range of germs than are the narrow spectrum antibiotic drugs, such as penicillin. The word "antibiotics" when used in this opinion refers to broad spectrum antibiotic drugs.

These 27 actions are in four categories: (a) 19 of the actions are class actions on behalf of private hospitals; (b) 4 are actions brought by private hospitals in which no class claims are asserted; (c) 2 are actions on behalf of private hospitals in which class claims are made but which have been determined not to be maintainable as class actions; and (d) 7 are actions brought by Blue Cross plans. Three of the actions in category (a) above and two in category (b) are also counted in category (d) because they are brought by both private hospital and Blue Cross plaintiffs.

A "private hospital" is any non-governmentally operated hospital in the United States or Puerto Rico; put in another way, it is any hospital, whether profit or nonprofit, not operated by a local, state or the federal government. A "hospital" means an institution which (1) (a) has at least six beds for the care of patients who are non-related, who are sick, and who stay on the average in excess of 24 hours per admission; (b) has an organized medical staff (which may include doctors of osteopathy); and (c) offers services more intensive than those required merely for room, board, personal services, and general nursing care; or (2) was listed as a hospital in the Hospitals Guide Issue of the Journal of the American Hospital Association for any of the years 1955 through 1967.

A "Blue Cross plan" is a type of nonprofit hospital service organization and furnishes to contract subscribers hospital service (including drugs) or reimbursement for all or part of the expense of such service.

There are in total before this Court some 150 similar civil actions against the same defendants, either commenced in this District or transferred here by the Panel. These some 150 actions are divided into the following groups: (a) the 27 actions here in consolidation including those which are the subject of the present application; (b) one action in which plaintiff was offered but rejected the same proposed settlement on which the present application is based; (c) some actions in which plaintiffs have not been offered any settlement by defendants; (d) 66 class actions for government entities, wholesale druggists, retail drug stores and individual consumers to which classes a separate offer of settlement has been made by defendants; and (e) some actions for government entities to which this separate offer of settlement was made by defendants but rejected by plaintiffs.

The claim in each of the actions is that defendants violated the antitrust laws in the sale of antibiotics, specifically Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2); treble damages are sought, as authorized in 15 U.S.C. § 15. Nearly all these civil actions were stimulated by an indictment of three of the defendants in this District and judgment of conviction after a jury verdict returned on December 29, 1967.

All of the some 150 actions were for a considerable period assigned to me. By order with opinion filed December 2, 1970 and amended December 8, 1970, the non-settling actions, all of those described in groups (b), (c) and (e) above, were by the Judicial Panel on Multidistrict Litigation assigned to Judge Miles W. Lord of the District of Minnesota, assigned to this District through the procedure provided in 28 U.S.C. § 292(c). See In re Antibiotic Drugs, 320 F.Supp. 586.

The separate offer of settlement to the classes represented in the group (d) 66 class actions was approved by me in an opinion filed June 24, 1970 (see State of West Virginia v. Chas. Pfizer & Co., 2 Cir., 314 F.Supp. 710) and by judgments entered September 29, 1970 in those actions. These judgments were affirmed by the Court of Appeals on March 29, 1971 (440 F.2d 1079).

A familiarity with the approving opinions just mentioned is assumed and their recital of the background of the many civil actions will not be here repeated.

Some developments in the criminal case since the filing of my opinion should be noted. Reversal of the conviction (United States v. Chas. Pfizer & Co., 2nd Cir., 426 F.2d 32) was reflected in my opinion (314 F.Supp. at 720). On November 12, 1970, the Court of Appeals entered an order granting a petition of the government for a rehearing in banc. Thereafter the original panel denied a petition to it for a rehearing but in an opinion which substantially limited the precedential effect of the original opinion of the panel. United States v. Chas. Pfizer & Co., 2 Cir., 437 F.2d 957. The judges

then voted 4 to 3 to vacate the order granting a rehearing in banc and to deny such relief. 437 F.2d 957. A petition for certiorari was filed by the government with the Supreme Court on January 29, 1971 and remains undecided.

1. Events Leading to the Submission for Approval of the Proposed Compromise

Under date of February 6, 1969, defendants offered to pay $20,000,000 in settlement of claims of private hospitals, of any entities (including Blue Cross plans) claiming to have made reimbursement payments in respect of the private hospital claims, and (with some exceptions) "all other claims of any kind whatsoever". This offer was rejected by all or nearly all of the private hospital and Blue Cross plan plaintiffs.

There then ensued many meetings between counsel on both sides in many of these 27 actions. The Court was kept informed in a general way of these discussions and met with counsel on March 14, 1969, March 17, 1969, April 29, 1969, June 5, 1969, September 3, 1969, January 7, 1970, February 24, 1970, and April 3, 1970.

Under date of April 3, 1970, defendants made a second written offer of settlement, which is the proposed compromise now before the Court.

The principal features of the second offer of settlement were: (a) the amount to be paid by defendants was raised to $32,500,000 from $20,000,000, (b) the claims to be settled were somewhat narrowed to include only claims of private hospitals and Blue Cross plans (c) the settlement amount was to be paid into escrow on a fixed date, creating the probability of a substantial interest accrual for the benefit of the claimants, and (d) a division of the settlement amount is specified as between the private hospitals and the Blue Cross plans.

The second offer of settlement was accepted by nearly all those to whom it was addressed; those acceptances required by the offer were received by April 9, 1970.

There were many problems of procedure for administering the settlement, especially the selection of which private hospital action or actions should be maintained as class actions.

There was discussion of this subject between Court and counsel on June 10, 1970. On the same day, the Court made an order requiring the parties to these actions to show cause on June 25 why an order should not be made establishing a procedure for administering the settlement proposal.

The hearing took place on June 25 and a number of views were expressed as to the best procedure.

After study of the various papers and suggestions submitted, the Court drafted two orders for administering the settlement and sent these drafts to counsel. Their comments were received at a hearing held on October 30, 1970.

An order was filed on November 24, 1970 which, among other things, consolidated these 27 actions (Fed.R.Civ.P. 42(a)) "for the purpose of considering and, if appropriate, administering the April 3, 1970 settlement offer of defendants". The same order specified the form of the caption thereafter to be used.

A second order was filed on November 24, 1970. It was determined that 19 of the 27 actions in consolidation were to be maintained as class actions for private hospitals (Fed.R.Civ.P. 23(b) (3)). This class was defined substantially as "private hospital" is described earlier in this opinion. It was provided that all counsel of record for plaintiffs or intervenor plaintiffs in the 19 class actions should constitute a Committee of Counsel. The Clerk was directed to mail to each class member a notice in form annexed and as required by Fed.R.Civ.P. 23(c) (2). The Clerk was also directed to mail to each class member a notice in form annexed of a hearing to be held on February 19, 1971 to determine whether the proposed

compromise of the nineteen private hospital class actions should be approved (Fed.R.Civ.P. 23(e)).

The mailing of the notices took place and a certificate of mailing was filed. There are approximately 4,500 private hospital class members which are registered with the American Hospital Association (AHA). There are approximately 650 private hospital class members which are not registered with AHA. There are thus some 5,150 members of the private hospital class.

In response to the notice of class actions, some 18 class members timely filed requests to be excluded from the class. Some 90 class members timely entered appearances through their own counsel.

No papers were filed in opposition to the proposed compromise.

The hearing took place on February 19, 1971. No one appeared to oppose the proposed compromise.

■ After considering the pleadings on file and the affidavits and memoranda submitted, the Court is satisfied that the proposed compromise is fair and reasonable and should be approved.

2. Terms of the Proposed Compromise

The proposed compromise will be described generally, without attempting to go into great detail.

The defendants agreed to pay $32,500,000 in full settlement of all claims of private hospitals and of Blue Cross plans in the United States and Puerto Rico. Two-thirds (2/3) of the $32,500,000 (that is, $21,666,666.67) is for distribution among private hospitals and one-third (1/3) (that is, $10,833,333.33) is for distribution among Blue Cross plans. The defendants agreed to pay this sum on April 9, 1971. No decision of the present application having been handed down by that date, an order was filed on that date directing defendants to deposit with Chase Manhattan Bank as Escrow Agent the sum of $32,446,471.81 (after adjustment for class members requesting exclusion and for administrative expenses) under an Escrow Agreement, the form of which was approved by the order and a copy of which was annexed. The adjustment described parenthetically above was attributable to the private hospital class. The amount deposited in escrow was therefore designated as $21,613,138.48 for the private hospital class and $10,833,333.33 for Blue Cross plans.

The net settlement sum to the private hospital class will be first allocated by states, based on the ratio of the non-Blue Cross admissions of all private hospitals in each state to the total non-Blue Cross admissions of all private hospitals in all states. "Non-Blue Cross admissions" refers to admissions not covered by any Blue Cross plan. "State" includes the District of Columbia and Puerto Rico.

The method of the first allocation will be generally as follows. The admissions to each private hospital in a state will be determined for each year in the period 1954–1967. The total of admissions to all private hospitals in the state for each year will then be obtained. These totals will then be reduced for each year by the percentage of the population in the state covered by Blue Cross plans. The state totals so reduced will be combined to show the total national non-Blue Cross admissions. The net settlement sum will be allocated to each state in the same proportion which the non-Blue Cross admissions for each state bear to the total national non-Blue Cross admissions.

Within each state, the settlement sum allocated to that state will be further allocated to each private hospital in the same proportion which the admissions to that hospital bear to the total admissions to all private hospitals in the state. The allocation to each private hospital in a state is thus based on all admissions, whether covered by Blue Cross plans or not.

It is contemplated that statistics published or collected by the American Hospital Association will be employed, among others. The percentage of the population in the states covered by Blue Cross plans

will be obtained from statistics published by the Blue Cross Association.

The sum of $21,613,138.48 available for private hospital class members is subject to further reduction for future administrative costs and for counsel fees and expenses.

The sum of $10,833,333.33 available for Blue Cross plans will be divided among these plans, all of which are said to be plaintiffs or intervenor plaintiffs in one of the Blue Cross actions before the Court, by averaging the following three figures for each Blue Cross plan and then multiplying the average by $10,833,333.33:

(1) Total admissions reimbursed by the Plan divided by total admissions reimbursed by all Plans for the years 1954 through 1967.

(2) Total patient days reimbursed by the Plan divided by total patient days reimbursed by all Plans for the years 1954 through 1967.

(3) Total active subscriber contracts of the Plan divided by total active subscriber contracts of all Plans for the years 1954 through 1967.

The reasons for approval are generally the same as those set out in the opinion approving a compromise of the 66 actions for which defendants made a separate settlement offer. 314 F.Supp. 710, 741–748. Some factors of weight in considering the present proposed compromise of these 19 class actions should be referred to specifically.

The absence of any opposition whatever to the proposed compromise is significant. The class members are institutions, most of which are of a size having regularly retained counsel available for advice in this matter. Some 90 class members elected to appear by their own counsel. Not a single member of the class opposed the settlement offer.

The present proposal is the second made by defendants and is an increase of $12,500,000 over the $20,000,000 of the first offer which was rejected by nearly all plaintiffs. The Court knows at first hand about the negotiations leading to the second offer and knows that they were at arms length and vigorously pursued.

Counsel to plaintiffs in these class actions include lawyers known to the Court as both able and experienced. This factor is of significance not only as bearing on the results of negotiations with counsel for defendants but also as bearing on the division of the overall settlement amount—$32,500,000—between the private hospitals and the Blue Cross plans. It appears that defendants had little, if anything, to do with this division; it was the result of negotiations between counsel for the private hospitals and counsel for the Blue Cross plans. It was clearly not practicable to determine what dollar amounts had been paid by Blue Cross plans to private hospitals as reimbursement for antibiotic drugs furnished by the hospitals to patients covered by Blue Cross plans. The logic of the division agreed upon derived from a study of statistics which showed that 35.6% of patient days in private hospitals represented patients covered by Blue Cross plans and that 36.2% of admissions to private hospitals were patients covered by Blue Cross plans. It was felt that some downward adjustment of these figures was in order because drugs dispensed by private hospitals to out-patients are reimbursed at a lower rate and also in some instances there is not full reimbursement for the full costs of drugs dispensed to in-patients. Thus came about the $2/3$–$1/3$ ratio.

The formula for allocation to each member of the private hospital class from the total amount available to the class is a fair and reasonable formula. Defendants had little, if anything, to do with constructing this formula. This was done by the private hospital plaintiffs themselves and at their request was included by defendants in their settlement offer.

The formula allocates the total sum as between the states on the basis of ratio of non-Blue Cross admissions to total such admissions. This was done in order to eliminate any effect on the state ratios of Blue Cross admissions, these having already been provided for by the $2/3$–$1/3$ division; it was believed that the percentage of Blue Cross admissions of total admissions in all states varied widely from state to state. Unless Blue Cross admissions were eliminated before determining the ratio of each state, those states having a high percentage of Blue Cross admissions would benefit at the expense of those states having a low percentage of Blue Cross admissions. Moreover, statistics by states of Blue Cross admissions were readily available.

Within each state, the formula allocates to each private hospital on the basis of ratio of admissions (including Blue Cross admissions) of each hospital to total such admissions in the state. Within the states, the Blue Cross admissions are disregarded because (a) it would be expensive and time consuming to obtain such figures and (b) it was believed that the percentage of Blue Cross admissions would not vary widely from hospital to hospital within the state.

As to the allocation to each Blue Cross plan of the sum available to all such plans, the Court has no responsibility because these are not class actions. The formula has been reviewed, however, and seems fair and reasonable.

■ Since the proposed compromise of the 19 class actions is being approved, the defendants are entitled to an order in each of those actions, and also in each of the 7 Blue Cross actions, directing judgment in their favor dismissing the action as to them. The 19 class actions will not thereby be terminated because the Court must reserve jurisdiction for the purpose of distributing the settlement amounts amongst the class representatives and class members, after allowances for counsel fees and expenses.

It may be noted that certain plaintiffs in some of the class actions are not class representatives because they are not members of the private hospital class but are Blue Cross plans. These plaintiffs are:

Associated Hospital Service of New York (a plaintiff in action 68 Civ. 3763)

Rochester Hospital Service Corporation (a plaintiff in action 68 Civ. 3763)

Massachusetts Blue Cross, Inc. (a plaintiff in action 69 Civ. 832)

Blue Cross of Western Pennsylvania (a plaintiff in action 69 Civ. 2158)

These plaintiffs will receive payments in settlement as Blue Cross plans and dismissal of the respective actions as to them is appropriate.

It may also be noted that the following actions by private hospital plaintiffs are not class actions, either because they were not brought as such or because it was determined that they should not be maintained as class actions:

Hospital Service Corporation of Rhode Island, et al. v. Chas. Pfizer & Co., Inc., et al., 68 Civ. 4971 (S.D.N.Y.)

Beekman-Downtown Hospital, et al. v. Chas. Pfizer & Co., Inc., et al., 69 Civ. 135 (S.D.N.Y.)

Blue Cross of Northeast Ohio, et al. v. Chas. Pfizer & Co., Inc., et al., 69 Civ. 1015 (S.D.N.Y.)

Immanuel, Inc. v. Chas. Pfizer & Co., Inc., et al., 69 Civ. 4626 (S.D.N.Y.)—prior to transfer, Civil No. 03373 (D. Nebraska)

Northwest Hospital Inc. v. Chas. Pfizer & Co., Inc., et al., 69 Civ. 4446 (S.D.N.Y.)—prior to transfer, 69 C 1859 (N.D.Illinois)

The French Hospital of Los Angeles, et al. v. Chas. Pfizer & Co., Inc., et al., 70 Civ. 2789 (S.D.N.Y.)—prior to transfer, 70–1101–IH (C.D.California)

The plaintiffs in these actions will receive payments in settlement on the same

basis as, and by the same procedure for, all other members of the private hospital class. Dismissal of their actions is thus appropriate.

■ Finally it may be noted that certain plaintiffs in certain actions are not being paid anything in settlement because they are not private hospitals and are not Blue Cross plans but are associations of hospitals who brought actions not for damage caused to them but for the benefit of their members. These plaintiffs are:

Association of California Hospital Districts

California Hospital Association

Hospital Council of Northern California

Hospital Council of Southern California

United Hospital Association

Colorado Hospital Association

(plaintiffs in 68 Civ. 4543)

American Hospital Association, Inc. (a plaintiff in 69 Civ. 755)

Missouri Hospital Association (a plaintiff in 69 Civ. 758)

Southeastern Hospital Conference, Inc. (a plaintiff in 69 Civ. 1480)

Kansas Hospital Association, Inc. (a plaintiff in 69 Civ. 2522)

Washington State Hospital Association (a plaintiff in 69 Civ. 5105)

While these plaintiffs will not receive payments in settlement, such payments will be made to their members and their counsel by accepting the settlement and urging its approval consent for them to dismissal of their actions. Dismissal as to them is thus appropriate.

The proposed compromise is approved.

Settle order in each of the 27 actions in consolidation.