In re Coordinated Pretrial Proceedings in
**ANTIBIOTIC ANTITRUST
ACTIONS.**
**M 19–93A**
**and the following actions:**
**68 Civ. 4343, 69 Civ. 776, 68 Civ. 4264,
69 Civ. 839, 68 Civ. 2370, 69
Civ. 798 and 69 Civ. 3194.**

United States District Court.
S. D. New York.

Feb. 10, 1971.

Motion for Rehearing or Certification
Denied March 9, 1971.

As Amended March 9, 1971.

Class Action No. 2, May 4, 1971.

---

## OPINION

### (Consumer Class Actions)

MILES W. LORD, District Judge (By Assignment).

These seven actions were brought by the states of California, Hawaii, Kansas, Oregon, North Carolina, Utah and Washington against the five corporate defendants [1] for alleged price-fixing in the sale of certain broad spectrum antibiotic drugs. These states refused the defendants' settlement offer and were excluded from the settlement classes for government entities established by Judge Wyatt. State of West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710, 724 (S.D. N.Y.1970). They were assigned to this judge, along with all other nonsettling

---

1. The five defendants are American Cyanamid Co., Bristol-Meyers, Chas. Pfizer & Co., Squibb-Beechnut, Inc. and The Upjohn Co.

cases, for the completion of pretrial proceedings. In re Antibiotic Drug Litigation 320 F.Supp. 586 (Jud.Pan.Mult. Lit.1970).

Prior to transfer here the states moved for the establishment of each of their actions as class actions on behalf of two classes—one composed of government entities within each state and another composed of all retail purchasers of the drugs for human consumption within the state. Some states sought to allege a cause of action *parens patriae* on behalf of those individual consumers who failed to come forward with their claims in any class action [2] and to allege a cause of action *parens patriae* on behalf of the state for damages to its economy.[2a]

The government entity class was established in an earlier opinion. This leaves for consideration the retail consumer class and the individual consumer *parens patriae* claims. The defendants strongly oppose the states' requests in both of these areas. They assert that the proposed consumer class is unmanageable and that it may result in the compromise of their due process and jury trial rights.

The court concludes that the plaintiffs have made a sufficient showing to warrant the establishment of the proposed classes, but only on the condition that no notice be sent to the class members until plaintiffs satisfy the court that these actions are manageable and that the classes can be adequately notified of the pendency of these actions. Cusick v. N. V. Nederlandsche Combinatie Voor Chem. Ind., 317 F.Supp. 1022 (E.D.Pa.1970);

City of Philadelphia v. Emhart Corp., 50 F.R.D. 232. Because of this disposition of the class action issue, the court deems it unnecessary to examine the proposed *parens patriae* claims of the states and those motions are denied.

■ The plaintiffs have satisfied many of the requirements of Rule 23 for the maintenance of a class action. First, they have met the tests imposed by Rule 23(a). There is no question but that the members of the consumer class within each state are so numerous that joinder is impractical. Many of the defendants' arguments concerning manageability proceed on that premise.[3]

■ The representative parties are also asserting claims typical of the claims of the class members. All seven of the states support welfare programs which reimburse welfare recipients for the purchase of prescription drugs, including broad spectrum antibiotics of the type involved in this litigation. Because of these reimbursements the states stand in the shoes of a substantial number of purchasers of the drugs in question during the relevant periods and throughout their jurisdictions.[4]

■■ Finally, it is difficult to imagine a better representative of the retail consumers within a state than the state's attorney general. Historically the common law powers of the attorney general include the right and duty to take actions necessary to the maintenance of the general welfare and his presence in these actions is but a modern day application of that right and duty. His rep-

---

2. North Carolina seeks to achieve the same result through a receiver appointed under state law to prosecute the action on behalf of consumers unable to establish their purchases.

2a. This court previously denied claims of this type on the basis of State of Hawaii v. Standard Oil Co., 431 F.2d 1282 (9th Cir. 1970).

3. In one brief they state:

It is defendants' position that the enormous classes proposed are of such magnitude and character as to make it impossible as a practical matter to

"manage" the actions in which they are proposed.

4. The defendants' arguments concerning variety of circumstances in which consumers may have purchased antibiotics and the variances in the states' welfare programs do not alter this conclusion. These factors may be of significance in establishing subclasses at a later point in the litigation, however. State of Iowa v. Union Asphalt & Roadoils, Inc., 281 F.Supp. 391 (S.D.Iowa 1968); Philadelphia Elect. Co. v. Anaconda Amer. Brass Co., 43 F.R.D. 452 (E.D.Pa.1968).

resentation of the class provides the class with experienced counsel possessing sufficient resources and professional assistance to meet the obligations inevitably placed on a representative party under Rule 23.

■ Plaintiffs have also shown that common questions of fact predominate over individual questions in these actions. F.R.Civ.P. 23(b) (3). The prior opinion establishing the government entity class also concluded that common questions of fact and law were presented in the two aspects of the liability question, i. e., did the defendants violate the antitrust laws and did any violation injure the members of the plaintiff class. And the commonality of these questions has usually been considered sufficient to satisfy the predominance standard. City of Philadelphia v. Emhart Corp., supra; State of Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D.Minn.1968); State of Iowa v. Union Asphalt & Roadoils, Inc., 281 F.Supp. 391 (S.D.Iowa 1968); Philadelphia Elect. Co. v. Anaconda Amer. Brass Co., 43 F.R.D. 452 (E.D.Pa.1968); See Gold Strike Stamp Co. v. Christensen, 436 F.2d 791 (10th Cir. 1970).

■ The defendants seem to suggest, in arguing the manageability issue, that individual proof of damages is the predominant question. In attempting to determine which issues can be said to predominate, at least one court has rejected the defendant's suggestion that the court must compare the time required to resolve the liability and damage issues under Rule 23. State of Minnesota v. United States Steel Corp., supra, 44 F.R.D. at 569. As that case suggests, a more appropriate test is to compare the time that would be spent on the common and individual issues in the absence of a class action. On this basis the question of liability is clearly predominant over the damage issue.

An important additional factor in the finding of predominance of common questions is the court's tentative conclusion that the amount of damages due the plaintiff class may also be litigated through representative parties under Rule 23. It is far simpler to prove the amount of damage to the members of the class by establishing their total damages than by collecting and aggregating individual damage claims as a sum to be assessed against the defendants. And it is the court's tentative conclusion that this can be done without sacrificing the rights of the defendants. The questions of the amount of overcharge paid by retail consumers, variations in that overcharge within the state and certain affirmative defenses to the claims of retail purchasers, such as reimbursement from an insurer or welfare program, are common to substantial groups of retail consumers within each state. These questions could be resolved through subclass litigation which would preserve the defendants' right to jury trial and due process without necessitating the expensive and unnecessary relitigation of these questions in individual cases. Individual claims would then be made against the judgment awarded to the class.

The defendants argue that Rule 23 requires each class member to come forward with his claim prior to trial. The cases cited by the defendants do not go this far. In Philadelphia Elect. Co. v. Anaconda Amer. Brass Co., supra, the requirement that a proof of claim form be filed was imposed on several classes whose members were readily identifiable, whose claims were relatively easily calculable, and who could, presumably, bear the expense of such a procedure. The court imposed the requirement because it "would reveal the true scope of the litigation, and would either greatly reduce the trouble and expense of any subsequent notices which may be required, or provide a basis for informed re-appraisal of the class-action question under 23(c) (1)."

■ In Harris v. Jones, 41 F.R.D. 70 (D.Utah 1966), the court required a second round of notices, after the initial Rule 23(c)(2) notices, informing the members of a stockholder class that they must file "simple statements of their

claims" or face dismissal. The purpose of this requirement was not to gather in all damage claims but to gather information enabling the court "to determine the adequacy of existing representation, more effectively to define the class or to establish or eliminate sub-classes, and to establish practical guides for the trial of cases and, it is hoped, for the submission of the issues for meaningful determination by a jury." A similar objective is served in the present case by the requirement that plaintiffs satisfy the court concerning certain manageability and notice questions. If these cases cited by the defendants are relevant at all, it is on the question of when absent class members must come forward with proof of their claims, and it is doubtful that such a burdensome requirement should be imposed on a class like the present one where the injury has been spread over a large number of purchasers, none of whom may have a claim large enough to justify the expense of preparing a proof of claim form until they are assured of a recovery. *Cf.* Korn v. Franchard Corp., 50 F.R.D. 57 (S.D.N.Y. 1970). It would seem far better to defer the filing of proof of claims by the individual members of these classes until after these cases have gone to trial and judgment. If the representatives of these classes are successful on behalf of the absent class, the members will know that their efforts in proving their individual claims will be rewarded. On the other hand, should the defendants prevail, there will be no need for the class members to search their records for proof of purchases of antibiotic drugs during the relevant period. The court is unwilling to impose so great an expense and burden on the absent members of these classes at this time.

The defendants' principal concern seems to be that, in the event liability is found, a small number of claims will be filed against the judgment "fund" and that the balance remaining after satisfaction of these claims will go to the representative parties, not injured consumers. We see no reason why this problem need ever occur for one of the court's objectives in requiring plaintiffs to respond to the questions contained in the court's order is to devise a program of notice which will produce a large number of claimants and return most of the judgment to individual consumers. In any event, the court sees no reason why any residue must necessarily pass to the representative parties, but reserves judgment on the question until it becomes apparent that such a problem in fact exists.

These cases also meet several of the qualifications listed in Rule 23(b) (3) for determining the "superiority" of class action. As to factors (A), (B) and (C), the superiority of the class action is clear. The individual members of the class have little, if any, interest in maintaining separate actions. Their claims are large in the aggregate but small on an individual basis, giving them little incentive to enforce their rights individually. State of Illinois v. Harper & Row Publishers, Inc., 301 F.Supp. 484, 489 (N.D.Ill.1964). In addition, the common questions are so predominant that an individual class member could have little objection to his representation by a competent plaintiff. *Cf.* Hobbs v. Northeast Airlines, 50 F.R.D. 76 (E.D. Pa.1970).

Finally, there is the question of whether difficulties in the management of these actions preclude a finding that the class action is "superior to *other available methods* for the fair and efficient adjudication of the controversy." [Emphasis added] It should be noted at the outset that difficulties in management are of significance only if they make the class action a *less* "fair and efficient" method of adjudication than other available techniques. This perspective is particularly important in the present cases where the defendants, after reciting potential manageability problems, seem to conclude that no remedy is better than an imperfect one. The court would be hesitant to conclude that conspiring defendants may freely engage in predatory price practices to the detriment of millions of individual consumers

and then claim the freedom to keep their ill-gotten gains which, once lodged in the corporate coffers, are said to become a "pot of gold" inaccessible to the mulcted consumers because they are many and their individual claims small.

The court's tentative conclusions concerning the trial of the damage issue eases the management problems considerably. Damages would be awarded on a class-wide basis, if and when liability was established, and individual claims could then be processed administratively after entry of judgment.

Many questions remain, however, concerning the manner in which these cases should be administered and the feasibility and method of any notice to the class members. And the court is mindful of the language of Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 570 (2d Cir. 1968):

It may be that in some situations it is better at the outset to decide that the proceeding may be prosecuted as a class action and leave for later resolution some of the debatable matters, such as the sufficiency of the representation or the notice to be given, or the feasibility of meeting problems of judicial administration. In this particular case, with its millions of possible claimants, we think it would be most amiss to let the case go ahead until it becomes hopelessly entangled in a mass of procedural detail and expense from which it may not be easy or even possible to extricate it with justice to the parties by the simple means of deciding at a later day that the order permitting the case to proceed as a class action was improvidently granted.

Accordingly, it seems appropriate to require that before notice is sent to the members of the consumer class plaintiffs must demonstrate that these actions are sufficiently manageable and that satisfactory notice to the class is possible. Cusick v. N. V. Nederlandsche Combinatie Voor Chem. Ind., *supra*; City of Philadelphia v. Emhart Corp., *supra*. In addition to making the order conditional in this manner, the court specifically reserves the right to alter or amend it as provided in Rule 23(c) (1). While the parties are responding to the court's order on these questions, the court will proceed, with the help of the parties, to consider and resolve the many preliminary questions which can be dealt with independently of the class action issue.

CLASS ACTION ORDER NO. 71–5

ORDER DETERMINING THAT CERTAIN ACTIONS ARE TO BE CONDITIONALLY MAINTAINED AS CLASS ACTIONS ON BEHALF OF CLASSES OF PURCHASERS AT RETAIL FOR HUMAN CONSUMPTION

This matter comes on before the court upon the motions of the various plaintiff states in the actions listed on the caption hereof, for orders allowing amendments to their complaints to allege *parens patriae* causes of action and determining that their respective actions be maintained as class actions on behalf of classes of purchasers of broad spectrum antibiotics at the retail level for human consumption under Rule 23, F.R.Civ.P.

The court has considered the records and files herein, including the said motions for class action determination and *parens patriae* status, the memoranda and affidavits filed by the parties in support and opposition thereto, the proposals filed by various plaintiffs at the request of the court and of their own volition, the transcripts of earlier proceedings relating to these motions, and related motions filed therein, and the court is fully advised in the premises. Now, therefore, after due consideration the court finds:

A. The members of the class defined below are so numerous that joinder of all members of any such class in the same action is impracticable.

B. There are questions of law and fact common to such class.

C. The claim of each of the representative parties designated below is typical of the claims of the class represented.

D.   Each state party plaintiff to the actions listed in the captions hereof is determined to be the proper representative of its class here established and will fairly and adequately represent its class.

E.   With respect to the class designated below, the questions of law and fact common to the members of the class predominate over any questions of law or fact affecting only individual members.

F.   With the exception of certain questions concerning manageability and notice to the class, those class actions have been shown to be superior to other available methods for the fair and efficient resolution of the controversies.

G.   Certain matters concerning the manageability of these actions and the notices to be given under Rule 23 cannot yet be determined.

It is therefore ordered that each of the actions listed in the caption hereof is to be maintained as a class action under F.R.Civ.P. 23(b) (3) by the state plaintiff commencing each action for itself and as representative party for the following class:

Purchasers within the state who, during the period 1954 through 1966, purchased or paid for broad spectrum antibiotic products at the retail level for human consumption, including the state on account of payments made therefor for the benefit of recipients of welfare programs;

It is further ordered that no notice shall be sent to the class until the court so orders;

It is further ordered that the plaintiffs file within 20 days a memorandum of fact and law stating specifically, in detail, and where possible with reference to appropriate legal authority or factual documentation;

(1) The approximate size of the class each plaintiff seeks to represent and the manner in which that size was determined;

(2) Any *factual* information they deem relevant to the determination of manageability;

(3) Any proposals for limiting the size or increasing the manageability of the classes;

(4) How, in general outline, these cases should be administered, from the present date through the award of damages to the class and the processing and payment of individual class members' claims;

(5) Whether subclasses should be designated and, if so, on what basis and by whom represented;

(6) A specific itemization of all costs which the plaintiffs can reasonably expect to incur (including attorney's fees) in the prosecution of this case from the filing of the complaint through the award of damages to the class and including the cost of any procedure suggested for the processing and payment of individual claims from the damages awarded the class.

(7) A specific itemization of any other expenses which might reasonably be incurred by plaintiffs' class in proving their case and damages;

(8) An itemized approximation of the expenses which might reasonably be expected to be incurred by the "average" member of the plaintiffs' class in submitting his claim under the plaintiffs' proposed procedure;

(9) An itemized approximation of how much in damages the "average" member of the plaintiffs' class might reasonably be expected to ultimately prove;

(10) As a matter of law and practice, at what point or points in the course of this case notice should be sent to the members of the class;

(11) Proposed means of notifying the other members of the class at each point in the course of this case where notice, if appropriate, together with an itemization of the cost of each notice;

(12) What type of notice is required in these cases to give other members of the plaintiffs' class notice consistent with Rule 23 and the due process clause;

(13) How much of the cost of preparing and communicating the notice each plaintiff would be prepared to bear;

(14) Any other information relevant to the issues implied by the foregoing which plaintiffs desire to bring to the attention of the court.

It is further ordered that defendants shall file a reply within 15 days of receipt of the plaintiffs' memorandum. Both the plaintiffs' memorandum and the defendants' reply may incorporate by reference any papers filed to date which would be relevant to the specific questions raised.

It is further ordered that all claims or motions which seek to present a *parens patriae* cause of action either on behalf of individual consumers within the state or for damages to the state's general economy are hereby denied. The denial of these claims or motions relating to standing to sue *parens patriae* for injury to the general economy is without prejudice to renewal at a later date in the event of a decision by the United States Supreme Court in Hawaii v. Standard Oil Co., 431 F.2d 1282 (9th Cir. 1970).

CLASS ACTION ORDER NO. 71–7

ORDER DENYING DEFENDANTS' MOTION FOR REHEARING ON CERTAIN ASPECTS OF CLASS ACTION ORDER NO. 71–5 AND IN THE ALTERNATIVE FOR CERTIFICATION PURSUANT TO § 1292(b), TITLE 28, U.S.C.

This matter comes on before the court upon the motion of defendants for re-

hearing on certain aspects of Class Action Order No. 71–5, *supra,* and, in the alternative, for certification under 28 U.S.C. § 1292(b) of the Order and the accompanying Opinion.

The court has considered the records and files herein, including said motion for rehearing or certification, the Class Action Order No. 71–5 and accompanying Opinion, all other material considered in entering that Order and has heard oral argument from the parties relating to this motion, and the court is fully advised in the premises.

Now therefore, after due consideration the court finds that rehearing of the matters suggested by defendants is unwarranted. The court further finds that, in view of the discretion retained by the court under Class Action Order No. 71–5 and the remaining questions concerning the classes therein established, the order does not present a controlling question of law and its immediate appeal will not, at this time, materially advance the ultimate termination of these actions.

It is therefore ordered that the defendants' motion for rehearing or certification be denied.

OPINION

NO. 2

Consumer Class Actions

Seven states bring these actions against the five defendant drug manufacturers, seeking to recover for alleged overcharges in the sale of certain broad spectrum antibiotics.[1] Each of the states

---

1. The seven states are California, Hawaii, Kansas, North Carolina, Oregon, Utah and Washington. The five defendants are American Cyanamid Co., Bristol-Myers Co., Pfizer, Inc. (formerly Chas. Pfizer & Co.), Squibb-Beechnut, Inc. and The Upjohn Co. These cases are part of approximately 150 actions against these defendants which were filed in this district or transferred here by the Judicial Panel on Multidistrict Litigation for coordinated or consolidated pretrial proceedings. See, In re Antibiotic Drug Litigation, 295 F.

Supp. 1402 (Jud.Par.Mult.Lit.1968); 297 F.Supp. 1126; 299 F.Supp. 1403; 301 F.Supp. 1158; 303 F.Supp. 1056; 309 F.Supp. 155. The settlement of sixty-six of these actions as class actions has been approved. West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710 (S.D.N.Y. 1970), aff'd 440 F.2d 1079 (2d Cir. 1971). Settlement has also been reached in an additional group of cases involving the claims of private hospitals and Blue Cross plans. Hartford Hospital v. Chas. Pfizer & Co., 52 F.R.D. 131 (S.D.N.Y.

seeks to represent a class composed of purchasers of the broad spectrum antibiotics at retail, within the state during the relevant period. On February 10, 1971, the court ordered that each of these actions could be maintained as actions on behalf of those classes, but that no notice was to be given under Rule 23 (c) (2) until certain questions had been answered concerning the superiority of these class actions to other available methods for resolving this controversy. The order required the states to respond to a series of specific questions concerning the manageability of the actions and the practicality of giving notice and required the defendants to reply to the responses.

### I. *Status of Hospital Patient Claims.*

An initial problem, which must be faced before considering the management and notice questions, concerns the status of residents within the states who purchased or paid for broad spectrum antibiotics from public or private hospitals during the period in question. In their responses to Class Action Order No. 71-5, *supra,* six states have said they do not understand the class defined by that order to include this category of class actions.[2] The basis for their position is a potential conflict between the claims of this "hospital patient" group and the claims of public hospitals, which are part of the government entity class represented by the same states pursuant to Class Action Order No. 71-4, 333 F. Supp. 267.

In view of the states' reluctance to represent a group of claimants arguably within their class, it might be simplest to amend the definition of the class to exclude that group. However, Rule 23 charges the judge with a duty to protect the interests of absent class members, *see, e. g.,* Schwartzman v. Tenneco Mfg. Co., 319 F.Supp. 1278, 1281 (D.Del.1970), and, if hospital patients are excluded from the class at this point, it might well constitute the "death knell" for their claims. It is extremely unlikely that any potential plaintiff within this group in any of the seven states can afford to file an action on behalf of the class and provide the type of (c) (2) notice which this court has required of the representative parties in other classes [3] and will require of the states in these consumer classes. It would be unfair to allow the states to abandon this group, which is at least arguably within the class as originally defined, before the mailing of (c) (2) notices because of potential conflicts they foresee in the future. The fairest plan is to modify the class definition to include these claimants, assuring that effective (c) (2) notice will be directed to them, while reserving for later consideration the potential conflicts asserted by six of the states.[4]

### II. *Superiority of the Rule 23 Class Action.*

The question left unanswered by Class Action Order No. 71-5 is that posed by Rule 23(b) (3) (D)—can the

---

1971). The approximately sixty "non-settling" cases have been assigned to the undersigned judge for the completion of pretrial proceedings. See In re Antibiotic Drug Litigation, 320 F.Supp. 586 (Jud. Par.Mult.Lit.1970).

2. The State of North Carolina apparently believes these claimants to be within the consumer class, although it acknowledges the potential for conflict with public hospital claims.

3. See Class Action Order Nos. 71-10, 71-14 and 71-15 (ordering that notice be given to national classes of veterinarians, wholesaler-retailers in the "farm" market

and a class of "farm" purchasers of defendants' products.)

4. It should be noted that a motion to intervene in these actions has been filed on behalf of certain claimants within the "hospital patient" group in the State of California and counsel for those claimants stated in open court that additional motions in other states would be forthcoming. Should the Court later determine that a conflict does exist between these claimants and the public hospitals, representative parties would apparently be available to lead a subclass of hospital patients.

actions be managed and notice directed to the class members in such a manner as to make the class action superior to other available methods for the resolution of the controversy between defendants and the class members.[5] For reasons to be stated, the court has concluded that this question must be answered in the affirmative.

## A. Manageability.

The problems of management may be broken into two component parts—first, the method by which the quantum of damages is to be proven and, second, the efficacy of the class action in returning any overcharge to the class members.

## 1. Quantum of Damages.

The memorandum opinion accompanying Class Action Order No. 71–5 established that here, as in most other antitrust cases, the issues of liability and fact of damage could be litigated on a class-wide basis. The major obstacle to manageability, however, arose from the quantum of damage issue. On the one hand, the defendants contended that individual proof of damages at trial by the class members would require so much time and create such complexities for the parties, court and jury that the actions would be unmanageable. On the other hand, they contended that any other method of proving this issue at trial would substantially prejudice them and violate their rights to a jury trial and due process. See Handler, The Shift From Substantive to Procedural Innovations in Antitrust Suits—The Twenty-Third Annual Antitrust Review, 71 Col. L.Rev. 1, 5–12 (1971).

In the memorandum opinion accompanying Class Action No. 71–5, the court responded to this problem by tentatively suggesting "that the amount of damages due the plaintiff class [might] also be litigated through representative parties under Rule 23" and noting that it was "far simpler to prove the amount of damage to the members of the class by establishing their total damages than by collecting and aggregating individual damage claims * * *." It was envisioned that if and when the defendants' liability and the damages suffered by the class had been established and judgment in an appropriate amount entered, a second round of notice might be used to alert class members to the existence of the damage fund and to elicit claims against the fund from the members of the class.

The defendants have raised many and varied objections to the court's proposal, most of which have obscured rather than clarified the issues. The most misleading of their arguments characterizes a class-wide recovery as a "pot of gold" which the plaintiffs and their counsel are somehow not entitled to receive. If we assume that a price-fixing conspiracy is proven at trial, however, the defendants will certainly have no right to the "pot of gold" created by their illegal activities. And the success of their scheme and the size of the "pot" would certainly be no basis for leaving the money in their hands.

It should also be clear that the plan to have the individual claims filed only if liability and damages are proven is not a reincarnation of the "one-way intervention" procedures under former Rule 23, which the new rule was designed to end. See Advisory Committee's Notes, Proposed Rules of Civil Procedure, 39 F.R.D. 98, 105–106 (1965). The classes in these actions will be bound by the judgment, whether favorable or unfavorable, and if the judgment is unfavorable to the class there will be no need to secure individual damage claims.

The defendants also suggest that the method of proof amounts to a tacit recog-

---

5. Rule 23(b) (3) requires the court to make the "superiority" determination by considering several pertinent matters, one of which is "the difficulties likely to be encountered in the management of a class action." The court, in its prior opinion, found that all the criteria of Rule 23(a) and (b) (3) had been satisfied with the exception of the manageability factor.

nition of the states' *parens patriae* claims formerly asserted on behalf of absent class members.[6] This is simply not true. The state, as *parens patriae*, would not be acting as a Rule 23 representative of others similarly situated but as a sovereign on behalf of its citizens. The most significant consequence of this difference concerns the award of damages proven by the state/representative party but unclaimed by individual citizen/class members. The *parens patriae* doctrine would apparently require that all such amounts be given to the state for administration for the benefit of the absent citizens. Rule 23 does not require that the class representative be so rewarded and, although the prospect of returning unclaimed damages to the defendants after judgment is not an attractive one, the disposition of such a fund under Rule 23 is a question to be answered at a later time, if at all.

Defendants also contend that there is no reason to delay the filing of claims until after judgment since the cost of notice, the state's ability to give notice and the expense to the consumer filing a claim are the same now as they would be after any judgment for plaintiffs. Insofar as the defendants are suggesting that the class be limited to consumers who file proof of claim forms, the court has already made clear, in its previous opinions, that it does not read Rule 23 as imposing such a requirement. Nor do the facts of this case support the discretionary imposition of such a requirement. *Cf.* Eisen v. Carlisle & Jacquelin, 52 F.R.D. 253 (S.D.N.Y.1971). Although the costs of notice and filing claims does not vary from pretrial to postjudgment, it should be obvious that the class members would have much less incentive to file a claim, especially a small claim, where recovery is problematical. The result would be that, assuming liability is proven, many otherwise meritorious damage claims would never be presented. For the same reason, a request that proof of claim forms be voluntarily completed and returned would produce little information. Whatever discovery the defendants wish to make can be more effectively accomplished by a more scientific approach. The court has repeatedly stressed its willingness to aid the parties in "sampling" or conducting a more intensive study of the claims within a representative state or subdivision and again reaffirms that position.

The central argument of the defendants is that trial of the damage issue in the manner contemplated by the court would "clearly and seriously impair" the defendants' rights to due process "in resisting at trial the claims being asserted against them." What the court takes to be a particular illustration of the potential for prejudice appears elsewhere in their brief. There the defendants stress the conflicting claims asserted by the different plaintiffs in the human consumption market cases now before the court. For example, several insurance companies presently seek to represent a national class of insurers on the theory that any damages suffered by the consumers was "passed on" to them. Similar claims are made by a group of union welfare plans, also seeking status. The defendants assert that, if the insurers and welfare plans are ultimately proven correct in their theories, they will be unable to defend against consumers who passed on their damages to these plaintiffs unless the class members are required to file their claims before trial.

---

6. The *parens patriae* claims of the states on behalf of the individual consumers within the states were earlier denied by Class Action Order No. 71–5, *supra*, and the *parens patriae* claims for injury to the general economy of the states were denied "without prejudice to renewal at a later date in the event of a decision by the United States Supreme Court in Hawaii v. Standard Oil Co., 431 F.2d 1282 (9th Cir. 1970)", in which certiorari has been granted 401 U.S. 936, 91 S.Ct. 931, 28 L.Ed.2d 215.

The court is very much aware of the threat of inconsistent recoveries posed by the conflicting groups of plaintiffs in this multidistrict litigation. However, this problem relates more to the sequence of trial in these cases than to the plan for class-wide proof of damages. And the court is seeking, with the help of counsel for all parties to evolve a trial plan which will eliminate this threat.

The defendants also suggest that they will be prejudiced under the court's plan by an inability to defend against consumers who are unable to prove their purchases. This logic seems somewhat misguided since the very purpose of the court's plan is to eliminate the need for individual proof of purchases. The defendants have not argued that damages cannot be accurately computed by reliance on sales figures, and the court has concluded, on the basis of information developed to date, that they could not so contend. *Cf.* Eisen v. Carlisle & Jacquelin, *supra, citing* Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946); Union Carbide & Carbon Corp. v. Nisley, 300 F.2d 561, 590 (10th Cir. 1952), *appeal dismissed*, Wade v. Union Carbide & Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46 (1962). Most important management decisions in the business world in which these defendants operate are made through the intelligent application of statistical and computer techniques and these class members should be entitled to use the same techniques in proving the elements of their cause of action. The court is confident that they can be successfully utilized in the courtroom and that their application will allow the consumers to protect their rights while freeing the court and the defendants of the specter of unmanageability. In these circumstances the court cannot conclude that the defendants are constitutionally entitled to compel a parade of individual plaintiffs to establish damages. Assuming damages are later awarded on the basis of sales figures and that the total of individual claims then filed is less than the award, the court will then consider what disposition to make of the residue.

Finally, the defendants argue that no class actions of this magnitude have ever been authorized by any other court. *See* Hawaii v. Standard Oil Co. of California, 301 F.Supp. 982, 984 n. 3 (D.Hawaii 1969); United Egg Producers v. Bauer Int'l Corp., 312 F.Supp. 319, 321 (S.D.N.Y.1970); Hackett v. General Host Corp., Civil Action No. 79-354 (E.D.Pa. 1970), *appeal pending.*[7] It is obvious, however, that the only manner in which the plaintiff class can ever prosecute their claims is by a Rule 23 class action and the court cannot simply close its doors to these litigants because their actions present novel and difficult questions. Instead the court and the parties must use their ingenuity to conduct this litigation in a manner which will guarantee the rights of both sides. In a recent discussion of the challenges encountered by courts in facing the question of damages under Rule 23, Professor Benjamin Kaplan remarked that "[I]magination and even daring may be required of counsel and courts in devising abbreviated but fair procedures leading to hand-tailored relief which may well be quite novel in form." Kaplan, A Prefatory Note, 10 B.C.Ind. & Com.L. Rev. 499-500 (1969). It is in this spirit which the court and parties must meet the future problems of this litigation.

### 2. *Efficacy of Class Action.*

One of the court's concerns in requiring the parties to provide certain factual information in response to Class Action Order No. 71-5 was the efficacy of the

---

7. Since the filing of defendants' reply, however, Judge Tyler has determined that Eisen v. Carlisle & Jacquelin should proceed as a class action on behalf of approximately 6,000,000 class members, subject to a preliminary hearing on the merits to determine the allocation of the costs of notice. Eisen v. Carlisle & Jacquelin, *supra.*

proposed class actions as devices for securing recovery allegedly due the class members. If the primary benefit of a class recovery went only to the attorneys for the class, there would be little reason for allowing the class action to proceed. Estimates of the average treble damage claim vary from $366 to $600. The court has selected the more modest figure of $60.00 treble damages per class member, which was arrived at by dividing California's estimated total recovery, $300,000,000, by its estimated class size, 4,851,000 households. Applying this figure to the estimated class size within each state and subtracting twice the estimated total recovery for the state (because the states' cost estimates did not anticipate the requirement of a direct mail (c) (2) notice and as a general margin of safety), produces a substantial damage fund in each state. The estimated costs to the class members in submitting their claims under the suggested procedure are small, varying from $1.40 to $1.90 per claim, depending upon the verification procedure employed. It is thus clear that, should liability be established, each class member would receive a relatively large recovery with minimal cost.

III. *Notice.*

The second area of difficulty in these cases concerns the feasibility and method of giving notice to the class members as required by Rule 23(c) (2). On the basis of the proposals submitted by the states, the court has concluded that the (c) (2) and any subsequent notices may practicably be given by the states in a manner which comports with Rule 23 and the due process clause. As to the (c) (2) notice, the Court is of the opinion that "the best notice practicable under the circumstances" is a direct mailing of the notice form approved by the court to all addresses within the state which are either on mailing lists in the possession of the state or its agencies or available from other sources. Most, if not all, of the states contemplate using "Occupant" mailings which reach a significantly large percentage of all households within each state. In class actions of this scope, less demanding notice has been authorized under Rule 23(c) (2). *See* State of West Virginia v. Chas. Pfizer & Co., Inc., 440 F.2d 1079 (2d Cir. 1971); Eisen v. Carlisle & Jacquelin, *supra.* The court is satisfied the required notice meets the requirement of Rule 23. The parties have attempted to make the notice as clear and succinct as possible. It will be printed either as a single-sheet "mailer," folded and addressed, or as a postcard, bearing the notice message on one side and the address on the other.

The court is of the opinion that the notice should be directed from the Clerk of Court to the class members and its mailing should be handled in the same manner as other mailings by the Clerk. Accordingly, the court has authorized the states to print the mailers and postcards with the Government frank. The court anticipates that the cost of franking these notices, which has been minimized by the use of mailers and postcards, may eventually be taxed to the parties as a cost of the litigation.

The court's prior experience with other classes in this litigation indicates that many notice recipients will direct their notices of exclusion, appearances of counsel and inquiries to the return address appearing on the envelope or mailer rather than to the address indicated on the notice itself. The use of a Post Office Box return address on the mailers and postcards will hopefully eliminate this bottleneck.

The states will also draw up press releases for submission to the court and defendants. The approved form of these releases will be constructed and timed to draw attention to the mailing of notices to the classes.

It should be noted in connection with the mailing of this (c) (2) notice that the court has rejected defendant's pro-

posal that an interrogatory from them be included with the notice form. Although the proposed interrogatory form does not state that the claimants who fail to file interrogatories will have their claims barred, it contains language which can reasonably be read as intimating that result. And the court can see no reason for such a requirement in this factual context. The defendants may legitimately pursue their discovery objectives concerning the size and number of claims of class members in the manner discussed earlier in this opinion.

## IV. *Certification.*

Finally, defendants have renewed their request that the orders establishing this class be certified pursuant to 28 U.S.C. § 1292(b). The court denied that motion after entry of Class Action Order No. 71–5, *supra,* because of the discretion retained by the court in that Order concerning the continuance of these actions as class actions. The court is not of the opinion, however, that entry of Class Action Order No. 71–11, 333 F.Supp. 291, makes these orders suitable for appellate review by certification. Rule 23 makes it clear that the court authorizing a class action retains the power to alter or amend its orders as circumstances change and where the problem faced by the court is basically one of manageability, there may be need for alteration or amendment as the factual context of the manageability problems become more clear. This continuing process of adjustment is best carried out by the judge charged with day-to-day responsibility for the litigation and this court is not willing to state to the appellate court that the decision of the manageability issue, at this stage of the litigation, presents a "controlling question of law," the resolution of which might materially advance the ultimate termination of the litigation.

Accordingly, the defendants' motion for certification will be denied.